**Geoffrey N. FIEGER, Plaintiff–Appellant,**

**v.**

**Philip J. THOMAS, Grievance Administrator, and Michigan Attorney Grievance Commission, Defendants–Appellees.**

Nos. 94–2378, 94–2379.

United States Court of Appeals,
Sixth Circuit.

Argued April 14, 1995.

Decided Feb. 8, 1996.

Michael Alan Schwartz (briefed), Fieger, Fieger & Schwartz, Southfield, MI, Robert A. Sedler (argued), Wayne State University Law School, Detroit, MI, for plaintiff-appellant.

Jane Shallal (argued and briefed), Michigan Atty. Grievance Com'n, Detroit, MI, for defendants-appellees.

Before: MERRITT, Chief Judge; KEITH and WELLFORD, Circuit Judges.

MERRITT, Chief Judge.

Michigan lawyer Geoffrey Fieger brought this suit in federal district court seeking to enjoin the Michigan Attorney Grievance Commission from prosecuting a three-count disciplinary complaint filed against him on October 12, 1994. In addition to the injunction, Fieger sought a declaration from the district court that the system for lawyer discipline in the State of Michigan and certain rules and standards of professional conduct as adopted by the Michigan Supreme Court are unconstitutional. The sole question we address on this appeal is whether the district court should have declined to address the issues under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and later cases. Because we conclude that the district court should have declined to exercise jurisdiction, we reverse the decision of the district court and remand with instructions that the case be dismissed. Our abstention decision in this case is controlled by the decision of the Supreme Court in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

## I. Background

The Michigan Attorney Grievance Commission ("Commission") is the prosecutorial arm of the State Supreme Court in matters relating to the supervision and discipline of Michigan lawyers. Michigan Court Rule 9.108(A) (hereinafter "M.C.R."). On October 12, 1994, the Commission filed a formal complaint against Geoffrey Fieger with the Michigan Attorney Discipline Board ("Board"). The Board is the adjudicative arm of the Supreme Court in matters relating to the supervision and discipline of Michigan lawyers. M.C.R. 9.110(A). The three-count complaint alleged that Fieger made several disparaging remarks about Michigan prosecutors, judges, justices and the judiciary in general in violation of M.C.R. 9.104(1)-(4) [1] and Michigan Rule of Professional Conduct (hereinafter M.R.P.C.") 3.5(c) [2], 8.2(a) [3] and 8.4(a)-(c) [4]. Rather than contesting the complaint using the disciplinary procedures approved by the Michigan Supreme Court, Fieger attempted to enjoin the state disciplinary proceedings by filing suit in federal court. He argued that the above-cited Rules

1. M.C.R. 9.104(1)-(4) provides:

   The following acts or omissions by an attorney, individually or in concert with another person, are misconduct and grounds for discipline, whether or not occurring in the course of an attorney-client relationship:
   (1) conduct prejudicial to the proper administration of justice;
   (2) conduct that exposes the legal profession or the courts to obloquy, contempt, censure, or reproach;
   (3) conduct that is contrary to justice, ethics, honesty, or good morals;
   (4) conduct that violates the standards or rules of professional responsibility adopted by the Supreme Court. . . .

2. M.R.P.C. 3.5 provides:

   . . . .
   A lawyer shall not:
   (c) engage in undignified or discourteous conduct toward the tribunal.
   The Comment to this Rule explains: "A lawyer may stand firm against abuse by a judge, but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review, and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics."

3. M.R.P.C. 8.2(a) provides:

   A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicative officer, or public legal officer, or of a candidate for election or appointment to judicial or legal office.
   The Comment to this Rule explains: "[F]alse statements by a lawyer can unfairly undermine public confidence in the administration of justice."

4. M.R.P.C. 8.4 provides:

   It is professional misconduct for a lawyer to:
   (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
   (b) engage in conduct involving dishonesty, fraud, deceit, misrepresentation, or violation of the criminal law, where such conduct reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer;
   (c) engage in conduct that is prejudicial to the administration of justice. . . .
   The Comment to the Rule explains that this Rule addresses what was traditionally understood to be offenses involving "moral turpitude."

of Professional Conduct violate his First Amendment rights and are facially invalid because they are vague and overbroad. He also contended that the Michigan lawyer discipline system violates his right to procedural due process because it does not guarantee that his constitutional claims will be adjudicated.

■ On December 2, 1994, Judge Borman issued an opinion in this case. At the conclusion of his legal discussion, Judge Borman summarized his holdings as follows:

> This Court holds that:
>
> (1) it will not abstain from dealing with Plaintiff's complaint;
>
> (2) it will not grant a preliminary injunction enjoining the [Commission] from prosecuting its complaint against Plaintiff before the [Board];
>
> (3) it will continue to exercise its jurisdiction over this case and will provide judicial review if the Michigan Supreme Court refuses to provide the meaningful judicial review required by the due process clause of the Federal Constitution;
>
> (4) MCR 9.104(1)-(4); and M.R.P.C. 8.2(a) and 8.4(a)-(c), do not violate the First Amendment vagueness overbreadth doctrines in this case, in particular given that each count of the [Commission] complaint limits the conduct subject to discipline to factual statements violative of the Supreme Court's *Sullivan* standard; and
>
> (5) the facts presented to this Court do not support the finding of a constitutionally-based equal protection/selective prosecution violation.

*Fieger v. Thomas,* 872 F.Supp. 377, 387–88 (E.D.Mich.1994). This ruling is subject to a de novo review. *Federal Express Corp. v. Tennessee Pub. Serv. Comm'n,* 925 F.2d 962, 967 (6th Cir.), *cert. denied,* 502 U.S. 812, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991).

## II. Analysis

### A. Abstention

It has been nearly 25 years since the Supreme Court instructed federal courts that the principles of equity, comity and federalism in certain circumstances counsel abstention in deference to ongoing state proceed-ings. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger,* the Court held that a federal court should not interfere with a pending state criminal proceeding except in the rare situation where an injunction is necessary to prevent great and immediate irreparable injury. The Court reasoned that important federalism concerns require:

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* at 44, 91 S.Ct. at 750. Since *Younger,* the Supreme Court has applied abstention to state civil proceedings which involve important state interests and to a variety of state administrative proceedings.

■ In 1982, in *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* the Supreme Court set out a three part test for determining when the abstention doctrine should be applied. 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). *Middlesex* is a disciplinary case, similar to the one at hand, in which a New Jersey lawyer filed suit in federal court to try to enjoin state disciplinary proceedings on the ground that the disciplinary rules violated his First Amendment rights and that the rules were facially vague and overbroad. The New Jersey Ethics Committee took issue with the lawyer's comments, made at the beginning of a criminal trial, that characterized the proceedings as "a travesty," a "legalized lynching," and "a kangaroo court." *Id.* at 428, 102 S.Ct. at 2519. The district court abstained on the basis of *Younger.* The Third Circuit, however, reversed on the ground that the state bar disciplinary proceedings did not provide a meaningful opportunity to adjudicate constitutional claims. The Appellate Court viewed the proceedings as "administrative," not "judicial." Thus, the Supreme Court had before it virtually all the questions that we now face—a constitutional attack on the state disciplinary rules as well as its procedures.

The Supreme Court reversed, enumerating the three-part test which forms the basis of our analysis today:

1) Do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding;

2) do the proceedings implicate important state interests; and

3) is there an adequate opportunity in the state proceedings to raise constitutional challenges?

*Id.* at 432, 102 S.Ct. at 2521.

### 1. The First Requirement: Ongoing State Judicial Proceedings

■ The first requirement of abstention under the *Middlesex* test is that of "ongoing state judicial proceedings." *Id.* The Plaintiff contends that the Michigan disciplinary proceedings are administrative proceedings, not judicial, and they therefore, fail the first part of the *Middlesex* test. The Supreme Court has reasoned, however, that the federalism concerns which gave rise to *Younger* and its progeny are fully applicable to non-criminal proceedings when important state interests are involved. *Id.* In *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, the Supreme Court held that in determining whether an administrative proceeding is judicial in nature for purposes of *Younger* abstention, a court must examine the "nature of the final act." 491 U.S. 350, 371, 109 S.Ct. 2506, 2520, 105 L.Ed.2d 298 (1989) ("*NOPSI* ") (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226–27, 29 S.Ct. 67, 69–70, 53 L.Ed. 150 (1908)). The Court explained that "[a] judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Id.* at 370, 109 S.Ct. at 2519 (quoting *Prentis*, 211 U.S. at 226, 29 S.Ct. at 69); *see also CSXT, Inc. v. Pitz*, 883 F.2d 468, 474 (6th Cir.1989), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1990). Because the Board is proceeding against Fieger to enforce its Rules of Professional Conduct, it is performing an adjudicative, as opposed to a legislative, function. It therefore, satisfies the first requirement for *Younger* abstention. Thus, under both *Middlesex* and *NOPSI*, the Michigan proceedings are judicial in nature for purposes of *Younger* abstention.

The Plaintiff relies on the Sixth Circuit case, *In re Grand Jury 89–4–72*, 932 F.2d 481 (6th Cir.), *cert. denied*, 502 U.S. 958, 112 S.Ct. 418, 116 L.Ed.2d 438 (1991). In that case, the Michigan Attorney Grievance Commission requested disclosure of all the evidence that had been presented to a grand jury in a bribery case and that might have related to criminal or unethical conduct by a Michigan lawyer. *Id.* at 482. The request was based on Federal Rule of Criminal Procedure 6(e)(3)(c)(i), an exception to the general rule prohibiting disclosure of grand jury proceedings. The grand jury had been charged with investigating allegations that a state judge had accepted bribes from lawyers in return for favorable consideration of pending cases. The lawyer argued that disclosure to the Commission would be improper because the discipline proceedings are not themselves judicial in nature nor do they provide for a sufficient judicial role to be considered preliminary to a judicial proceeding. *Id.* at 484. Thus, the question that the panel in *In re Grand Jury* addressed was whether an investigation by the Commission was preliminary to a "judicial proceeding" within the meaning of Fed.R.Crim.P. 6(e)(3). *Id.* at 483. The panel in *In re Grand Jury* analyzed the case under the oft-cited standard of Judge Learned Hand from *Doe v. Rosenberry*, 255 F.2d 118 (2d Cir.1958), and concluded:

On the record here we find the Michigan attorney discipline procedures do not evidence a substantial judicial role in the proceedings. We are not prepared to call an administrative hearing before a panel of private attorneys and laypersons, funded by a private organization, with limited discretionary review to the Michigan Supreme Court, a "judicial proceeding" **within the meaning of Rule 6(e)(3)(C)(i).** That the disciplinary proceedings are sanctioned under the authority of the state supreme court is irrelevant. No amount of artificial judicial procedure or due process can transform such an administrative panel

into a judicial body **within the meaning of the Rule.**

*In re Grand Jury,* 932 F.2d at 487 (emphasis added). Though the language in this opinion at first glance appears to support Fieger's contention, the case is inapposite to the abstention context. In *In re Grand Jury,* this Circuit held that there is insufficient judicial involvement in Michigan lawyer discipline proceedings to warrant disclosure of grand jury evidence to the Commission, an entirely different question from whether lawyer discipline proceedings should be characterized as judicial for abstention purposes. *See id.* For these reasons, *Middlesex and NOPSI,* not *In re Grand Jury,* must be applied to the case at hand, and the Plaintiff's argument that the proceedings are administrative must therefore fail.

Even if the proceedings in this case were fairly characterized as administrative, abstention would still be appropriate. *Ohio Civil Rights Comm'n v. Dayton Christian Sch.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986). In *Dayton,* the Supreme Court applied *Younger* abstention to "state administrative proceedings in which important state interests are vindicated" where "in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Id.* In rejecting the school's argument that the state administrative proceedings would not afford the opportunity to raise constitutional claims, the Court further observed that, "it is sufficient ... that constitutional claims may be raised in state-court judicial review of the administrative proceedings." *Id.* at 629, 106 S.Ct. at 2724. Thus, even if Plaintiff's argument regarding the administrative nature of the proceedings were valid, *Younger* abstention would still apply to this case. *See id.*

**2. The Second Requirement: Important State Interests**

■ *Middlesex* also held that in order to abstain, courts must find that the state has an important interest in regulating the subject matter of the claim. 457 U.S. at 434, 102 S.Ct. at 2522. Regulating lawyers' conduct is a fundamentally important state in-terest. *Id.* Michigan, like many other states, vests exclusive responsibility for regulation of the bar with its Supreme Court. Mich. Const. art. VI, § 5. The privilege of practicing law in Michigan is expressly subject to the conditions and standards which the Michigan Supreme Court adopts in the course of regulating lawyers' conduct. M.C.R. 9.103(A). Because the administration of justice in Michigan and the entire Michigan judicial system is dependent upon the ethical conduct and professional proficiency of Michigan lawyers, the State has an important interest in the pending State proceedings. *See Middlesex,* 457 U.S. at 434–35, 102 S.Ct. at 2522–23. Federal courts must be careful to accord lawyer discipline proceedings the proper degree of deference. The fact that Fieger poses a constitutional challenge to the substance of the rules of professional conduct as well as the procedures adopted to enforce them does not overcome Michigan's interest. In fact, it counsels in favor of abstention. "The breadth of a challenge to a complex state statutory scheme has traditionally militated in favor of abstention, not against it." *Moore v. Sims,* 442 U.S. 415, 427, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979). The policies of comity and federalism counsel that because Michigan has such an important interest in regulating its own bar, a state forum should have the first opportunity to review Michigan's rules of lawyer conduct and procedures for lawyer discipline. *See Middlesex,* 457 U.S. at 432–35, 102 S.Ct. at 2521–23. In addition, Federal courts have increasingly accepted the notion that state tribunals are competent to adjudicate federal constitutional questions. *See id.* at 436, 102 S.Ct. at 2523. The second requirement for *Younger* abstention is therefore met.

**3. The Third Requirement: An Adequate Opportunity to Raise Constitutional Challenges**

■ The third requirement for *Younger* abstention is that there be "an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* at 432, 102 S.Ct. at 2521. As the Supreme Court stated in *Moore,* "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." 442 U.S. at 425–26,

99 S.Ct. at 2379. "[T]he burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 14, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987) (quoting *Moore v. Sims,* 442 U.S. at 432, 99 S.Ct. at 2382). Fieger has not met this burden.

■ The Michigan lawyer discipline proceedings afford an adequate opportunity to raise constitutional challenges. After the Commission files a complaint with the Board, the Board assigns a hearing panel composed of three lawyers to conduct a public hearing on the complaint. M.C.R. 9.110, 9.111. Alternatively, the Board can assign the complaint to a master. M.C.R. 9.110, 9.117. The Michigan Court Rules specify that "[e]except as otherwise provided in these rules, the rules governing practice and procedure in a nonjury civil action apply to a proceeding before a hearing panel." M.C.R. 9.115(A). A lawyer called to answer disciplinary charges before a hearing panel (the "respondent") must answer the complaint, may be represented by a lawyer, can conduct discovery, may depose unavailable witnesses, and may, for good cause shown, depose other witnesses. *See* M.C.R. 9.115(A)-(F). The Board or chairperson of the hearing panel sets the time and place for the hearing and gives at least 21 days notice before the initial hearing. M.C.R. 9.115(G). The hearing itself is bifurcated. The panel first decides whether there has been misconduct and, if it concludes by a preponderance of the evidence that there has been, it conducts another hearing to determine the appropriate discipline. M.C.R. 9.115(J). After a hearing, the panel has the authority to discipline a lawyer or dismiss the complaint. *Id.* Discipline can range from revocation of the license to practice law in Michigan to probation and restitution. M.C.R. 9.106. Michigan Rules also dictate that the panel must file a report on its decisions regarding misconduct and, if appropriate, discipline: "The report must include a certified transcript, a summary of the evidence, pleadings, exhibits and briefs, and findings of fact." M.C.R. 9.115(J). All orders of the hearing panel are appealable to the Board for review. M.C.R. 9.118. If a lawyer is suspended for 179 days or less, a stay of discipline automatically issues on the timely filing by the lawyer of a petition for review and stay. M.C.R. 9.115(K). For suspension of greater duration, the lawyer must petition the Board for a stay. *Id.* A hearing on the Board's order to show cause is held before a sub-board of at least three Board members. The Board must make a final decision on consideration of the whole record. M.C.R. 9.118(C). The Board can request that the hearing panel take additional testimony or it can issue a decision. The Board may affirm, amend, reverse, or nullify the order of the hearing panel in whole or in part or order other discipline. M.C.R. 9.118(D). A copy of the Board's discipline order must be filed with the Supreme Court clerk. M.C.R. 9.118(F). Even after the Board issues its final decision, a lawyer can petition the Board to reconsider its decision. M.C.R. 9.118(E).

After the Board's decision is filed or after it issues an order denying the motion for reconsideration, the lawyer may apply for leave to appeal to the Michigan Supreme Court. M.C.R. 9.122(A). In his or her application for leave to appeal, the lawyer must show that the Board's decision is "erroneous and will cause material injustice." M.C.R. 7.302(B)(6). Once again, a stay of discipline issues automatically upon the timely filing of an appeal if the discipline order is a suspension of 179 days or less. M.C.R. 9.115(K). The stay remains effective until conclusion of the appeal or further order of the Supreme Court. M.C.R. 9.122(C). The lawyer may petition the Supreme Court for a stay pending appeal of other orders of the Board. *Id.* The Board certifies the original record and files it with the Supreme Court after the parties submit their briefs. M.C.R. 9.122(D). The record must include "a list of docket entries, a transcript of testimony taken, and all pleadings, exhibits, briefs, findings of fact, and orders in the proceeding." *Id.* Michigan Court Rules specify that the "Supreme Court may make any order it deems appropriate, including dismissing the appeal." M.C.R. 9.122(E).

Our review of the Michigan Attorney Disciplinary Rules indicates that there are many opportunities for a lawyer to raise constitu-

tional challenges and there is nothing in the Court Rules or procedures that clearly bars a lawyer from doing so. Defenses based upon constitutional challenges to the Rules of Professional Conduct may be raised before the hearing panel composed of fellow lawyers, before the Board, and before the Michigan Supreme Court in an application for leave to appeal. It also bears mentioning that a lawyer may petition to institute an original action in the Michigan Supreme Court to implement the Court's superintending control over the Commission or Board. M.C.R. 7.304. A lawyer may raise his constitutional challenges in his complaint seeking mandamus.

Fieger emphatically contends that the procedure summarized above does not afford him an opportunity to raise constitutional challenges. He maintains that the hearing panel and the Board cannot consider constitutional challenges to the Rules of Professional Conduct. He relies on two Michigan Supreme Court cases for this conclusion: *In re Estes*, 390 Mich. 585, 212 N.W.2d 903 (1973), and *Wikman v. City of Novi*, 413 Mich. 617, 322 N.W.2d 103 (1982). The Michigan Supreme Court in *In re Estes*, discussing the standard of review that the Court would apply to a final order of discipline from the State Bar Grievance Board, stated that the then-new disciplinary procedures are, "prior to final review by this Court, administrative and quasi-judicial in nature, rather than primarily judicial." *In re Estes*, 390 Mich. at 592, 212 N.W.2d 903. Fieger then refers us to an observation made by the Michigan Supreme Court in *Wikman* that "[g]enerally speaking, an agency exercising quasi-judicial power does not undertake the determination of constitutional questions or possess the power to hold statutes unconstitutional." 413 Mich. at 646–47, 322 N.W.2d 103 (citing *Dation v. Ford Motor Co.*, 314 Mich. 152, 22 N.W.2d 252 (1946)). This observation is dicta. *Wikman* involved property owners' challenge to special assessments levied by the City of Novi for appreciation in value of property from having a road near their properties paved. Plaintiffs sought removal of their case from the Tax Tribunal for a number of reasons, including, they argued, because the Tribunal lacked the power to

decide constitutional issues. After observing that agencies generally do not have the authority to declare statutes unconstitutional, the Court stated that, in any case, the plaintiffs were not seeking to invalidate the statute on constitutional grounds.

*Wikman* and *In re Estes* do not mandate the conclusion that Fieger will have an inadequate opportunity to raise his constitutional challenges during the disciplinary proceedings. First, the Court in *Wikman* did not make their observation unequivocal; they used the qualifying phrase "generally speaking." *Id. Wikman* only peripherally discussed the power of the Tax Tribunal, and it did not deal with the Board. Second, although the *In re Estes* case labelled the proceeding by the old State Bar Grievance Board "quasi-judicial," the Court did not address whether the Board had the power to adjudicate constitutional claims. *See* 390 Mich. at 601–02, 212 N.W.2d 903. In contrast, counsel for the Commission has stated in her briefs and oral argument before the district court and the appellate panel that the hearing panel and the Board are not precluded from hearing Fieger's constitutional claims.

Similar to the Plaintiff in *Middlesex*, Fieger has failed to demonstrate that members of the hearing panel and the Board, "the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees." *Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2523. Like the Ethics Committee in New Jersey, the Board "constantly [is] called upon to interpret the state disciplinary rules." *Id.* Even if the Board could not declare a Rule of Professional Conduct unconstitutional—a proposition about which we are not convinced—"it would seem an unusual doctrine, and one not supported by the cited case[s], to say that the [Board] could not construe [the Rules of Professional Conduct] in the light of federal constitutional principles." *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 629, 106 S.Ct. 2718, 2724, 91 L.Ed.2d 512 (1986). The Board could, short of declaring a Rule unconstitutional, refuse to enforce it or, perhaps, narrowly construe it. We are not convinced,

therefore, that Fieger is unable to raise his constitutional claims in the disciplinary proceedings. Alternatively, as the Supreme Court explained in *Dayton Christian Schools,* "it is sufficient under *Middlesex* that constitutional claims may be raised in state-court review of the administrative proceeding." *Id.* (citation omitted).

■ Fieger next argues that *Younger* abstention is inappropriate because the Michigan procedural rules do not accord him an appeal as of right to the Michigan Supreme Court in which he could raise his constitutional claims. Fieger points out that the New Jersey procedures at issue in *Middlesex,* unlike those in Michigan, provided that all decisions of the Disciplinary Review Board beyond a private reprimand are reviewed by the New Jersey Supreme Court and that briefing and oral argument are available for cases involving disbarment or suspension for more than one year. *Middlesex,* 457 U.S. at 427, 102 S.Ct. at 2518. He argues that guaranteed review through appeal as of right was essential to the Court's decision to abstain. This assertion is essentially academic speculation, unsupported by anything the Court said in *Middlesex* or subsequent cases. The majority found dispositive the fact that Hinds (the lawyer whose conduct was challenged in *Middlesex*), like Fieger in the instant case, had not even attempted to raise any federal constitutional challenges in the state proceedings. *Id.* at 429, 102 S.Ct. at 2519. The majority also found that Hinds had not demonstrated that the Committee would refuse to consider a claim that the rules violated federal constitutional guarantees. *Id.* at 435, 102 S.Ct. at 2522. The concurrence believed that the subsequent actions of the New Jersey Supreme Court, by sua sponte entertaining the constitutional questions, provided an ongoing judicial proceeding in which Hinds was afforded an opportunity to raise his constitutional challenges and, therefore, made *Younger* abstention appropriate. *Id.* at 439, 102 S.Ct. at 2525 (Marshall, J., concurring). The Supreme Court did not say that appeal as of right is a condition for *Younger* abstention when, in *Dayton Christian Schools,* the Court summarized its holding in *Middlesex:* "Similarly, we have held that federal courts

should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court." 477 U.S. at 627, 106 S.Ct. at 2723. The disciplinary proceedings in the instant case are clearly within the appellate jurisdiction of the Michigan Supreme Court. Michigan Court Rule 7.301(A)(3) provides that the "Supreme Court may ... review by appeal a final order of the Attorney Discipline Board." The Board's order is, thus, subject to judicial review. The Supreme Court has not mandated one type of review (appeal as of right) over another (application for leave to appeal).

Fieger also directs our attention to *Parker v. Kentucky Board of Dentistry,* in support of his contention that he must be guaranteed that an appeal will result in a decision on the merits of his constitutional claim and that he be assured of appeal as of right. 818 F.2d 504 (6th Cir.1987). Fieger quotes the following sweeping language from the opinion: "[F]or a federal court to abstain from reaching the merits of a case under *Younger,* it must be assured that there exists a definite opportunity for the federal plaintiff to raise his constitutional claims on direct state judicial review of the state administrative proceedings." *Id.* at 509. Dr. Stanley Parker was charged by the Kentucky Board of Dentistry with violating a Kentucky statute which prohibited dentists from holding themselves out to the public as being "especially qualified" in an area of dentistry for which the dentist had not obtained a specialty license. *Id.* at 506. The Board of Dentistry was empowered by statute to revoke, suspend or refuse to renew his license if it found after a hearing that Parker had engaged in "unprofessional conduct." *Id.* Before a hearing was held, Parker filed an action in federal district court seeking to enjoin the Board of Dentistry from disciplining him and seeking a declaratory judgment that his advertisement in the Yellow Pages was protected under the First and Fourteenth Amendments. *Id.* at 507. The magistrate judge hearing the case reached the merits of Parker's claim and issued an injunction. *Id.* The Board of Dentistry appealed. Prior to the appeal, the

Sixth Circuit requested that the parties to brief the abstention issue. The panel ultimately decided that the district court properly exercised jurisdiction over the case. *Id.* at 508. The Court found that the Kentucky procedures did not afford Parker an adequate opportunity to present his constitutional claims because the statute governing disciplinary proceedings provided review only if the Board of Dentistry decides to revoke a dentist's license. *Id.* at 508–09. For all other forms of discipline, the dentist would have to file a collateral action after his license was suspended or not renewed. *Id.* at 509. The Court held that "an opportunity for judicial review which is contingent upon the type of disciplinary action taken is insufficient to trigger *Younger* abstention." *Id.* Thus, *Parker* is distinguishable from the instant case because the Michigan disciplinary rules provide for direct judicial review of all Board disciplinary orders by means of a petition for leave to appeal to the Michigan Supreme Court. Fieger need not file a separate state court action to raise his constitutional claims. Despite Fieger's arguments to the contrary, *Parker* does not hold that a statute must provide for appeal as of right as opposed to appeal by leave.

As we noted earlier, the Michigan Supreme Court has before it the entire record of the disciplinary proceedings as well as the lawyer's application for leave to appeal. The application must show that the order is "erroneous and will cause material injustice." M.C.R. 7.302(B)(6). We are confident that the Michigan Supreme Court takes constitutional challenges to its regulations pertaining to lawyer conduct very seriously. We are especially reluctant to entertain doubts on that point where Fieger has not even attempted to either assert his rights in the ongoing proceedings or to invoke the Court's superintending control by filing a complaint for mandamus. Furthermore, Fieger has not brought to our attention any instance where a lawyer attempted to mount a similar constitutional challenge to the Rules of Professional Conduct and was not given an opportunity to do so. In fact, there is every indication that the Michigan Supreme Court is taking an active interest in the progress of this case and stands ready to consider the

constitutional challenges. We note that on May 25, 1995, the Board's hearing panel dismissed the charges against Fieger, apparently because the Commission did not provide a sufficient affidavit to counter Fieger's motion for summary disposition. *See* M.C.R. 2.116(C)(10) and M.C.R. 2.116(G)(4). Rather than seeking to amend its response, the Commission sought mandamus in the Michigan Supreme Court for superintending control under M.C.R. 7.304(A) against the Board. The Court accepted the complaint and ordered the Board to reinstate the charges and conduct a hearing on the merits of the ethics complaint. These actions suggest that the Michigan Supreme Court is interested in the case and will treat Fieger's constitutional challenges seriously.

Our result in this case, that the ability to raise constitutional issues before the Board as well as an opportunity to raise them again in a petition for leave to appeal satisfies the third requirement for *Younger* abstention, is consistent with the case law in the Ninth Circuit, the only other circuit of which we are aware that has addressed this precise issue. The Ninth Circuit, drawing on previous published opinions, held in a recent decision, *Hirsh v. Justices of the Supreme Court of the State of California,* that "[t]he fact that review is discretionary does not bar presentation of appellants' federal claims—appellants can raise the claims in a petition for review." 67 F.3d 708, 713 (9th Cir.1995). *Hirsh* also involved an attempt by lawyers to enjoin state disciplinary proceedings against them. The California Constitution precludes the Bar Court from considering federal constitutional claims. *Id.* at 713 (citing Calif. Const. art. III, § 3.5). Nevertheless, the Ninth Circuit held that opportunity to raise the federal claims in a petition for a writ of review satisfies the third requirement of *Younger. Id.* The Court based its holding on several published opinions, all of which stand for the general proposition that discretionary review affords a sufficient opportunity to raise federal constitutional challenges: *Beltran v. California,* 871 F.2d 777, 781, 783 (9th Cir.1988) (third requirement for *Younger* abstention met when federal plaintiff has the opportunity to present federal claims in a

petition for writ of review despite the fact that court of appeal simply "denied the petition without elaboration"); *Martori Bros. Distribs. v. James–Massengale,* 781 F.2d 1349, 1352, 1354 (9th Cir.), *amended on other grounds,* 791 F.2d 799 (9th Cir.), cert. denied 479 U.S. 949, 1018, 107 S.Ct. 435, 670, 93 L.Ed.2d 385, 722 (1986); and *Fresh Int'l Corp. v. Agricultural Labor Relations Bd.,* 805 F.2d 1353, 1362 (9th Cir.1986).

## B. Exceptions to Abstention

█ Having determined that the three requirements for *Younger* abstention are met in a given case, this Court will normally order a district court to dismiss a complaint unless the plaintiff can show that one of the exceptions to *Younger* applies, such as bad faith, harassment, or flagrant unconstitutionality. *See Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

█ In his legal briefs in the district court, Fieger argued that the Commission engaged in bad-faith prosecution because it did not prosecute Governor John Engler for statements which Engler made that were critical of a judge from the Ingham County Circuit Court. This claim of selective prosecution really amounts to a weak equal protection claim. And, as Justice Holmes pointed out in the only part of *Buck v. Bell* that remains unrepudiated, a claim of a violation of the Equal Protection Clause based upon selective enforcement "is the usual last resort of constitutional arguments." 274 U.S. 200, 208, 47 S.Ct. 584, 585, 71 L.Ed. 1000 (1927). We agree with the district court that Fieger has not introduced sufficient evidence to make out a claim of an equal protection/selective prosecution violation. Fieger has not demonstrated that the Commission's actions against *him* were motivated by bad-faith or with intent to harass. In *Younger,* the Supreme Court discussed the scope of the bad faith exception. The Court pointed out that in *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), an injunction against enforcement of certain state criminal statutes properly issued because the prosecutor made repeated threats against the federal plaintiffs to enforce the statutes without any expectation of securing a valid conviction. *Younger,* 401 U.S. at 48, 91 S.Ct. at 752. These threats were made with the intent to harass the plaintiffs and to discourage them from asserting their constitutional rights. *Id.* Fieger has not demonstrated that the Commission is using the lawyer disciplinary proceeding against him solely for the purpose of suppressing his exercise of free speech rights and with no real hope of ultimate success. We find that the disciplinary proceedings were brought lawfully and instituted in good faith.

█ From a review of the arguments made below, we do not understand Fieger to have been seeking an exception to abstention on the ground that the challenged statutes are "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 755 (quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). However, even if he had made this argument, it would have failed. In *Younger,* the Court determined that "a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." 401 U.S. at 51, 91 S.Ct. at 754. Fieger will have adequate opportunity to test whether M.C.R. 9.104(1)-(4) and Michigan Rules of Professional Conduct 3.5(c), 8.2(a) and 8.4(a)-(c) are unconstitutional "on their face," or whether they can be subject to a narrowing construction. As the Court concluded in *Younger,* "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it," especially absent "any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." 401 U.S. at 54, 91 S.Ct. at 755.

## III. Conclusion

This Court has reviewed the record and now finds that all the requirements for *Younger* abstention are met in this case, and that plaintiff has not shown that any of the exceptions apply. The district court should have abstained from exercising jurisdiction. We,

therefore, order that this case be **REMAND-ED** to the district court with instructions that Fieger's complaint be **DISMISSED.**