**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0243n.06
Filed: May 6, 2008

No. 07-5647

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAVID E. DANNER, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| BOARD OF PROFESSIONAL RESPONSIBILITY | ) | |
| OF THE TENNESSEE SUPREME COURT, and | ) | |
| LANCE B. BRACY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

BEFORE: COLE and GRIFFIN, Circuit Judges; and FORESTER, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff David Danner appeals the district court's February 12, 2007, Order (1) adopting the Report and Recommendation of the Magistrate Judge, (2) overruling plaintiff's objection to the Report and Recommendation, (3) granting defendants' Motion to Dismiss the Amended Complaint, and (4) dismissing the case without prejudice under the abstention principles elucidated in *Younger v. Harris*, 401 U.S. 37 (1991). Danner additionally appeals the district court's April 13, 2007, Order denying plaintiff's Motion to Alter and Amend Judgment, and the district court's June 28, 2007,

_____

[*]The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Order denying plaintiff's Motion to Set Aside Judgments. For the reasons set forth below, we affirm the orders of the district court.

I.

Plaintiff is an attorney licensed to practice law in the state of Tennessee. Danner had previously represented a client in a federal employment discrimination action. This matter was eventually settled with the client receiving settlement proceeds. A dispute arose between Danner and his client over the client's discovery deposition and the terms of the financial settlement. This dispute culminated in the client filing a complaint against Danner with the Board of Professional Responsibility of the Tennessee Supreme Court ("the Board") on February 25, 2005.

On April 4, 2005, the Board forwarded a summary of the complaint to Danner. Danner responded to the complaint on April 19, 2005, with further correspondence exchanged thereafter between Danner, his former client, and Lance B. Bracy, Chief Disciplinary Counsel for the Board. On January 30, 2006, Bracy informed Danner that the Board had voted to recommend diversion of the matter to a practice and professional enhancement program pursuant to Tennessee Supreme Court Rule 9, Section 30. Danner would attend this program at his own expense and, after successful completion, his disciplinary complaint would be dismissed. Danner was additionally informed that "[d]iversion into a practice and professional enhancement program does not constitute a disciplinary sanction and is confidential." Bracy notified Danner that he had the right to reject the recommended diversion, which would result in the matter being returned to the Board for further proceedings and the likely issuance of a private admonition or private reprimand.

On February 17, 2006, Danner responded to the January 30, 2006, letter. Danner informed Bracy and the Board that he "contest[ed] the Board action and decline[d] the alternate solution it propose[d]." He additionally requested "a hearing on this matter if discipline [was] imposed after the Board's reconsideration of this matter . . . ." The Board acknowledged receipt of this letter on February 22, 2006.

The Board considered the matter on March 10, 2006, and determined that a private informal admonition was an appropriate discipline. On March 31, 2006, the Board sent Danner notice of the discipline, as well as a proposed informal admonition. Both the notice and the informal admonition advised Danner that he could request a formal hearing within twenty days, as provided in Rule 9, Section 8.1, of the Tennessee Supreme Court Rules.

Danner filed the present civil action in the United States District Court for the Middle District of Tennessee on April 24, 2006, nineteen days after he received the notice and the proposed informal admonition. The suit named the Board and Bracy, in both his individual and official capacity, as defendants and alleged violations of 42 U.S.C. §§ 1983, 1985, the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as Article 1, §§ 8, 19, and 21 of the Tennessee Constitution. Danner sought to have the proposed, but not imposed, discipline vacated and withdrawn; to recover general, special, consequential, punitive, and exemplary damages, plus attorney's fees and court costs; to have the district court enjoin any policy, practice, or conduct by defendants determined to be in violation of the United States and/or the Tennessee Constitution; and to have a declaratory judgment that defendants violated his constitutional rights.

On August 31, 2006, defendants filed a Motion to Dismiss the Amended Complaint. On December 13, 2006, the Magistrate Judge issued a Report and Recommendation recommending dismissal pursuant to *Younger*. Defendants filed a timely objection to the Report and Recommendation. On February 12, 2007, the district court issued an Order adopting the Report and Recommendation and dismissing the case without prejudice pursuant to the *Younger* abstention doctrine. Danner then filed a Motion to Alter or Amend Judgment and a Motion to Set Aside Judgments, both of which were denied. Danner filed a Notice of Appeal on May 14, 2007, and later filed a second Notice of Appeal on July 26, 2007. This second appeal, which concerned the Order denying the Motion to Set Aside Judgments, was dismissed for failure to prosecute.

II.

In *Younger*, the United States Supreme Court counseled federal courts to abstain from enjoining certain pending state court criminal proceedings. This doctrine is borne out of a "proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44.

This doctrine has subsequently been extended to apply to both ongoing state civil proceedings, *see Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), and ongoing state administrative proceedings, *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423 (1982). A federal court should abstain only when three criteria are met, specifically: (1) the

underlying proceedings constitute an ongoing state judicial proceeding; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise constitutional challenges in the course of the underlying proceeding. *See Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003); *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir. 2001). A federal district court's decision to abstain from review of the merits of a case is reviewed de novo. *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006) (citing *Berger v. Cuyahoga County Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993)).

Turning to the question of whether the underlying proceedings constitute an ongoing judicial proceeding, we first note that the Supreme Court has previously held that state bar disciplinary proceedings can be considered "judicial in nature" despite the lack of a formal government action. *Middlesex*, 457 U.S. at 425-27. In *Middlesex*, the Court determined that the discipline proceedings at issue were "judicial in nature" and thus "warrant[ed] federal-court deference" because the New Jersey Supreme Court regarded the disciplinary hearings as judicial proceedings. *Id*. at 433. The Court's view stemmed from the fact that Article 6, Section 2, Paragraph 3 of the New Jersey State Constitution vested the power to discipline members of the state bar in the state supreme court, and the local New Jersey "District Ethics Committees" act as the disciplinary arm of that court. *Middlesex*, 457 U.S. at 425. Thus, to file a complaint with the local ethics committee was, in effect, the same as filing a complaint with the New Jersey Supreme Court. *Id*. at 433 (citing *Toft v. Ketchum*, 113 A.2d 671, 673-74 (N.J. 1955)).

The Tennessee Supreme Court performs a regulatory function similar to that of the Supreme Court of New Jersey. While the Tennessee Constitution does not formally assign the state supreme court the role of regulating and disciplining attorneys as seen in *Middlesex*, the Tennessee Supreme Court has itself held that it is "well settled and indisputable that the Supreme Court has the 'inherent supervisory power to regulate the practice of law . . . .'" *Brown v. Bd. of Prof'l Resp.*, 29 S.W.3d 445, 449 (Tenn. 2000) (quoting *In re Burson*, 909 S.W.2d 768, 773 (Tenn. 1995)). Further, in examining the function and role of the Tennessee Board of Examiners, the Tennessee Supreme Court has held that when the Tennessee General Assembly created the Board, they were merely creating an aid to the judiciary, and therefore the Board became part of the judicial branch of government. *Belmont v. Bd. of Law Examiners*, 511 S.W.2d 461, 463 (Tenn. 1974). The Court has noted that the Tennessee Board of Professional Responsibility, like the Board of Examiners, derived its functions and authority from the Supreme Court. *Brown*, 29 S.W.3d at 449; *Mercer v. HCA Health Svs. of Tennessee, Inc.*, 87 S.W.3d 500, 504 (Tenn. Ct. App. 2002).

Moreover, we have held previously that investigations by disciplinary counsel into suspected attorney misconduct, and concomitant disciplinary proceedings, are adjudicative functions for purposes of *Younger* analysis. *See Squire*, 469 F.3d at 556 (holding such in context of Disciplinary Counsel for the Supreme Court of Ohio); *Fieger v. Thomas*, 74 F.3d 740, 744 (6th Cir. 1996) (holding such in context of Michigan Attorney Grievance Commission). We similarly hold that the Tennessee disciplinary proceedings at issue are judicial in nature.

Our remaining inquiry as to the first *Younger* element concerns whether the underlying state proceeding was "ongoing." In conducting this inquiry, we have looked previously to the day of the federal complaint's filing. If the state proceeding was pending at the time of the filing, we consider the matter ongoing for purposes of the first *Younger* question. *Loch*, 337 F.3d at 578 (citing *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986)). The action "remains pending until a litigant has exhausted his state appellate remedies." *Id.* (citing *Huffman*, 420 U.S. at 609). Here, Danner filed his federal suit nineteen days after receiving the notice of proposed discipline, which was one day prior to the deadline for requesting a full hearing on the misconduct charge. At the time he filed his federal complaint, punishment had not been imposed and Danner had yet to avail himself of available appellate remedies. We therefore conclude that the state disciplinary matter was ongoing, and subsequently hold that the first element of *Younger* is satisfied.

III.

The second question in our *Younger* analysis is whether the disciplinary proceedings implicate important state interests. There can be no serious question that the regulation and discipline of attorneys is an important state function. As the Supreme Court has noted, the regulation of lawyers is of "especially great" interest to the state, as lawyers are "essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'" *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975) (quoting *Sperry v. Florida ex rel. Florida Bar*, 373 U.S. 379, 383 (1965)). *See also Fieger*, 74 F.3d at 745. Thus, we must conclude that the second element of the *Younger* abstention doctrine is satisfied.

IV.

The final question in our *Younger* inquiry is whether the state proceeding offered an adequate opportunity for Danner to raise constitutional challenges. As we have noted previously:

> Abstention is appropriate "unless state law clearly bars the interposition of the constitutional claims." *Fieger*, 74 F.3d at 745 (citations and quotation marks omitted). The plaintiff bears the burden of showing that state law barred presentation of his or her constitutional claims. *Id*. at 746. Once this third and final requirement is met, abstention is appropriate "unless the plaintiff can show that one of the exceptions to *Younger* applies, such as bad faith, harassment, or flagrant unconstitutionality." *Id*. at 750 (citation and quotation marks omitted).

*Squire*, 469 F.3d at 556. We note that Rule 9, Section 13 of the Tennessee Supreme Court explicitly provides for judicial review of the Board's decisions when it is alleged that these findings violate either statutory or constitutional provisions.

Danner is unable to demonstrate that the relevant statutory scheme prohibits the presentation of his constitutional arguments. Indeed, disciplinary counsel acknowledged Danner's constitutional arguments and stated that these arguments would be forwarded on to the Board. Danner instead proceeds by arguing that the Tennessee judiciary is biased against him. Specifically, in his brief, appellant asserts that there has been a "history of hostile, harassing treatment by Tennessee judges throughout his formative professional career which judicial treatment has included illegal sanctions, unlawful rulings, and irregular procedures [that] should provide sufficient basis for a state-court bias finding for an exception to *Younger* abstention . . . ." While bias is an exception to *Younger* abstention, it is an extraordinary one, and the petitioner alleging such must offer "actual evidence to overcome the presumption of honesty and integrity in those serving as adjudicators." *Canatella*

*v. California*, 404 F.3d 1106, 1112 (9th Cir. 2005) (citations and quotations omitted). Danner attempts to meet this burden by supplying five letters that he sent to various judiciary officials which he claims were ignored. This production falls woefully short of demonstrating that there is institutional bias against Danner in the Tennessee judiciary. We therefore conclude that the third prong of the *Younger* inquiry is satisfied and abstention is warranted.

V.

Danner additionally argues that the district court erred in failing to grant his "secondary post-judgment-relief motion concerning continuing bias against him in Tennessee state tribunals." The district court's order denying this motion was appealed only in appellant's second Notice of Appeal. This appeal, case number 07-5921, was dismissed for failure to prosecute. Danner's arguments regarding this point are therefore not properly before this court.

VI.

Finally, appellant contends that his appeal should be allowed to proceed because it is not barred under the *Rooker-Feldman* doctrine, which prohibits parties that have received an adverse state court decision from obtaining review of those decisions in federal district court. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Powers v. Hamilton County Pub. Defenders Comm'n*, 501 F.3d 592, 606 (6th Cir. 2007) ("*Rooker-Feldman* prevents an unsuccessful state court party 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights'") (quoting *Johnson v.*

*DeGrandy*, 512 U.S. 997, 1005-06 (1994)). Assuming Danner is correct in arguing that the doctrine does not bar the instant suit, a conclusion that is suspect given the relief plaintiff seeks, the doctrine certainly does not *compel* review in the present matter. The district court's opinion and order for dismissal rested on abstention principles, not on the *Rooker-Feldman* doctrine. This argument, therefore, has no merit.

VII.

For these reasons, we affirm the orders of the district court.