**James A. NEAL, as Executive Director of the Supreme Court Committee on Professional Conduct, Plaintiff,**

**v.**

**Jimmie L. WILSON, Defendant.**

**Jimmie L. WILSON, Plaintiff,**

**v.**

**Jack HOLT, Jr., Robert H. Dudley, Tom Glaze, and Donald Corbin, Members of the Supreme Court of the State of Arkansas, John Lineberger, Chancery Judge of the Fourth Judicial District of Arkansas; James Neal, Director of the Arkansas Supreme Court Committee on Professional Conduct; the Members of the Arkansas Supreme Court Committee on Professional Conduct; Robert Dono-**

**van, Attorney for the Arkansas Supreme Court Committee on Professional Conduct; John Doe Defendants and other unknown, each individually and in his official capacity as set out herein, Defendants.**

**Civil No. H–C–95–54.**

United States District Court, E.D. Arkansas, Western Division.

March 18, 1996.

Angela S. Jegley, Attorney General's Office, State of Arkansas, Little Rock, AR, for James A. Neal.

Roy C. Lewellen, Lewellen & Associates, Marianna, AR, John W. Walker, John W. Walker, P.A., Little Rock, AR, Sam Whitfield, Attorney at Law, Helena, AR, Elliott Dion Wilson, Wilson & Associates, Helena, AR, George E. Hairston, Attorney at Law, New York City, Victor Lamont Hill, Attorney at Law, Helena, AR, for Jimmie L. Wilson.

James W. Jeans, Sr., Attorney at Law, Platte City, MO, for Jack Holt, Jr, Robert H. Dudley, Tom Glaze and Donald Corbin.

Angela S. Jegley, Attorney General's Office, Little Rock, AR, for John Lineberger and Arkansas Supreme Court Committee on Professional Conduct.

*MEMORANDUM OPINION*

## H. FRANKLIN WATERS, Chief Judge.

This is a case in which the justice system of Arkansas, represented by the lawyers and the judiciary of this state, has not done itself proud. The long, tortured, and torturous route of this case through the courts of Arkansas, both state and federal, over many long years has ended up about where it started. In this court's view, this has resulted from the numerous lawyers in this case manipulating the system so as to derail it and bring this case to the stalemate that presently exists. The court also believes that the record reflects that the judiciary is not entirely blameless in allowing this to happen.

Although the conduct of Mr. Jimmie L. Wilson which will be described in detail below apparently occurred in 1981 and 1982, and although this case was filed in the Circuit Court of Phillips County in October of 1991, this matter has gone virtually nowhere during the intervening years. Sadly, when this court ends this portion of the matter as it intends to do and places the case back on course, it will be sitting virtually at the same point on the course where it started.

### Background.

As indicated, this all started in 1981 and 1982 when Jimmie L. Wilson, an African–American lawyer, farmer, state legislator, and civil rights activist from the Mississippi River delta region of Eastern Arkansas at or near Helena, stole money from the United States by scheming to sell mortgaged property and by withdrawing funds for unauthorized purposes by lying about the intended use of such funds. His conduct is described in *United States v. Wilson*, 806 F.2d 171 (8th Cir.1986), an opinion resulting from his first appeal of a conviction by a jury, thusly:

> Defendant practices law and operates a farm in Helena, Arkansas. Between February 1980 and April 1982 he borrowed approximately $775,230.00 from the FmHA for farm operating expenses with the loans primarily secured by an FmHA lien on his crops. To insure compliance with the security agreement entered into at the time of the loans, the FmHA circulated defendant's name on a list of FmHA borrowers to the grain dryers in the region of his farm. The grain dryers would then properly issue checks to defendant and the FmHA as co-payees as payment for crops transported from the farm.
>
> Between 1981 and December 1982, defendant made multiple sales of grain in the names of Willie Weaver and Reggie Wilson. Willie Weaver, defendant's cousin and co-defendant below, worked as a farm manager for defendant. Reggie Wilson is defendant's son and is a student, not engaged in farming. The government presented evidence that the proceeds from the sales made by Weaver and the junior Wilson, which were issued clear of the FmHA lien, went variously into defendant's law firm account, to cash, into his farm expense account, or toward payment on a bill for farm supplies.
>
> In May 1981, the FmHA required that supervised joint bank account be established in the names of the FmHA and defendant and his wife, Henrietta. FmHA loan proceeds were to be deposited into the joint account, and defendant was required to advise the FmHA of his intended use of funds prior to the time of any withdrawal. On various occasions, defendant would apply to the FmHA to have funds transferred from the joint account to his farm operating account from which he would retransfer the money to his law firm account. A substantial portion of funds was used for the purchase and maintenance of a Mercedes Benz.

*Id.* at 173.

In that decision and a prior decision later vacated by the court, the Court of Appeals held that the Supreme Court decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) did not apply retroactively.[1] Subsequently, in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93

---

1. Of course, *Batson* held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the [government's] case against a black defendant." *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719.

L.Ed.2d 649 (1987) the United States Supreme Court held that, indeed, *Batson* should be applied retroactively. The Court of Appeals then vacated its prior decisions, *United States v. Wilson,* 815 F.2d 52 (8th Cir.1987), and remanded the matter to the trial court to determine whether the requirements of *Batson* had been violated.

Judge G. Thomas Eisele held a hearing and determined that the government had adequately met the test required by *Batson* by showing that there were other legitimate non-discriminatory reasons for the prosecutor having exercised his peremptory challenges [2] to exclude certain black members of the jury panel from serving on the case. The Court of Appeals for the Eighth Circuit took the matter *en banc* and ruled, 7–4, that Judge Eisele's decision was clearly erroneous and that, in fact, the requirements of *Batson* had been violated. The conviction was reversed. *United States v. Wilson,* 884 F.2d 1121 (8th Cir.1989).

In August of 1990 a plea bargain agreement was reached and Mr. Wilson, on August 22, 1990, appeared before Judge Stephen Reasoner and pled guilty to an information charging him with five misdemeanor counts involving essentially the same conduct for which he had been initially convicted as a result of the felony indictment returned by the grand jury. In pleading guilty to these charges, it appears that he admitted essentially the same conduct as was charged in the felony indictment. *See* pages 19–21 of the transcript of the sentencing hearing which was attached to the initial complaint filed in this case in state court. He was sentenced to a period of incarceration.

On January 10, 1991, Judge G. Thomas Eisele entered an order in behalf of the entire court for the Eastern District of Arkansas, reciting that, with all judges of the court concurring,[3] Mr. Wilson was immediately suspended from the practice of law in the Eastern District of Arkansas "until final disposition of any disciplinary proceedings commenced as a result of any such conviction." Judge Eisele, again acting for the entire court, by letter dated January 10, 1991, to James A. Neal, executive director of the Arkansas Supreme Court Committee on Professional Conduct, advised the committee of Mr. Wilson's conviction, and advised that he was referring the matter to the committee "for the institution of a disciplinary proceeding before the court in which the sole issue to be determined shall be the extent of the final disposition to be imposed as a result of the conduct resulting in the conviction." (quoting from Rule I–D of the Model Federal Rules of Disciplinary Enforcement adopted by the court's for the Eastern District of Arkansas.)

Mr. Neal advised Mr. Wilson by letter dated March 29, 1991, of the institution of the proceedings against him, and advised him of his right to respond to the charges. An attorney entered an appearance for him and made multiple requests for an extension of the time required to respond to the charges. One extension was granted, but subsequent attempts were denied by a letter to Mr. Wilson's attorney dated June 10, 1991, in which Mr. Neal explained that he had consulted with Mr. Eddie Walker,[4] the committee chairman, who had instructed him to deny the request for an additional extension. Mr. Wilson made no response to the charges, and by letter dated July 22, 1991, he was notified that it was "the unanimous decision of the Committee that your conduct in this matter violated the Model Rules of Professional Conduct" and that a disbarment proceeding would be instituted in the event that

---

**2.** Of course, since *Batson,* the juror challenges that have been permitted for centuries at this stage of a trial are misnamed, since "peremptory challenge" means: "The right to challenge a juror without assigning, or being required to assign, a reason for the challenge." *Black's Law Dictionary* 1136 (6th Ed.1990).

**3.** It was because of this action and his participation in it that Judge George Howard decided to recuse in this case and direct that the matter be transferred to a judge outside the Eastern

District of Arkansas. That action resulted in the case being assigned to this judge.

**4.** Because of claims made in the matter by Mr. Wilson it is, perhaps, pertinent to note that the court knows that Mr. Walker, the chairman of the committee at the time, is a fine lawyer practicing in Fort Smith and was a former Arkansas Worker's Compensation Administrative Law Judge. He also happens to be of African descent.

Mr. Wilson had not voluntarily relinquished his license to practice law in Arkansas within seven days from the receipt of the letter.

On October 9, 1991, a lawsuit was filed in the Circuit Court of Phillips County, Arkansas, seeking his disbarment. Subsequently, the regular judges for that circuit recused for cause and, months later, on February 21, 1992, the Chief Justice of the Arkansas Supreme Court appointed Judge Lance Hanshaw from Lonoke, Arkansas, in another judicial circuit, to preside in the case.

The case rocked along with numerous continuances being requested and granted until June 19, 1992, when Judge Hanshaw wrote the attorneys for the parties advising that he would deny Mr. Wilson's motion to dismiss the complaint and would grant the motion for summary judgment filed in behalf of the committee. In that letter he said that: "The Defendant's license to practice law is suspended for a period of two (2) years and he shall surrender his license to practice law effective August 1, 1992, and further comply with Rule 11 of the Rules of Professional Conduct adopted March 11, 1985." The attorney for the committee, Robert Donovan, whom Mr. Wilson has since made a party to this case, was directed to draft an order and judgment not inconsistent with the court's opinion.

However, some seven months later, for reasons not clear in the record, by opinion filed February 16, 1993, Judge Hanshaw apparently changed his mind and granted Mr. Wilson's motion to dismiss. Without citing any specific authority, he seemed to simply hold that "the State Committee chose to wait, too long, and the defendant's motion to dismiss is granted and the State's complaint for suspension is dismissed." No applicable statute of limitations or other authority was cited for this conclusion.

In *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994) the court, in an opinion written by Chief Justice Holt, unanimously reversed the trial court and remanded the case to Judge Hanshaw with directions that he conduct further proceedings consistent with the opinion. However, in a letter dated April 20, 1994, by Judge Hanshaw to the Administrative Office of the Courts, Judge Hanshaw, incredibly, advised that it would be necessary to reassign the case to someone else "since the case has now been reversed and remanded by Chief Justice Jack Holt, Jr." In that letter, just as incredibly, he said:

> While my professional desire was to disbar Mr. Wilson, my research and understanding of the law was clearly explained in my opinion. I do so much disagree with the Chief Justice's opinion as to substance and law that I do not think that it would be appropriate for me to rehear this case.

On May 3, 1994, the acting Chief Justice of the Arkansas Supreme Court appointed Judge Lineberger to preside in the case under the authority of Act 496 of 1965 as amended. For some unknown reason, the order appointing Judge Lineberger was not filed by the Phillips County Clerk until September 14, 1994.

Again, the case rocked on for month after month with numerous requests for extensions of time and continuances being made. By letter dated October 27, 1994, Judge Lineberger set the matter for hearing on December 15, 1994. However, after Mr. Wilson filed a motion for continuance, and after he had also filed a motion asking Judge Lineberger to disqualify so that Judge Olly Neal could hear the case, the matter was continued by order dated December 12, 1994. Subsequently, the case was reset for January 30–31, 1995, but once again, because Mr. Wilson pointed out that he would be required to be present at a session of the Arkansas Legislature during that period, the case was continued by order dated January 9, 1995. It was finally reset by letter dated April 26, 1995, to start on June 13, 1995, in Marianna, Arkansas. Of course, by this time the case was coming up on its fourth anniversary.

Prior to that time, as the result of a settlement reached in a federal voting rights case, new electoral sub-districts were created providing for a majority of black voters in some electoral sub-districts, including the one in which the Helena, Arkansas, area is located.

Mr. Olly Neal,[5] an African–American, was elected to that judgeship. In spite of the fact that the case was clearly assigned to Judge Lineberger and that Judge Lineberger had declined to recuse and have the case reassigned to Judge Neal, Judge Neal attempted to assume jurisdiction and set a hearing for May 18, 1995. The committee, through its attorney, Mr. Donovan, appeared on that date and contested Judge Neal's jurisdiction to proceed.

Judge Neal ruled that he did have jurisdiction to proceed in the case and decided it on the merits. In an order signed on May 24, 1995, and entered on May 25, 1995, Judge Neal found that Mr. Wilson had, in fact, violated the Arkansas ethics rules but directed that the only sanctions imposed against him would be a letter of reprimand. The committee sought a *writ of certiorari* in the Arkansas Supreme Court and by *per curiam* opinion delivered on June 12, 1995, the court, with two justices dissenting, held that Judge Neal did not have jurisdiction to take the action that he took because the jurisdiction for the case rested with Judge Lineberger pursuant to the court's earlier order. The court found:

> Because we find Judge Neal has proceeded in excess of his authority and jurisdiction, his directives and orders relating to the action between petitioner and respondent are quashed.

It appears from the file that Judge Lineberger, on June 13, 1995, was in Marianna prepared to begin the trial. However, on that same day, Mr. Wilson filed in the United States District Court for the Eastern District of Arkansas, Helena Division, a pleading showing that he was represented by eight separate lawyers or law firms. The pleading was denominated "Petition for Removal; Petition for Temporary and Permanent Injunctive Relief; and Complaint at Law." In so doing, he not only removed the state disbar-

ment proceeding from the Circuit Court of Phillips County to federal court in Little Rock, he also sued about every state official and lawyer on the other side who had even touched the file up to that point. Made parties were all of the Supreme Court justices who had been in the majority on the *writ of certiorari,* Judge Lineberger, James Neal, the director of the Supreme Court Committee on Professional Conduct, and each individual member of the committee, Robert Donovan, the committee's lawyer, and John Doe defendants "known and unknown."[6]

Although there is no evidence which can be gleaned from the file which, in any way, supports the allegations, it is alleged, among many other things, that the "Supreme Court members named herein, acquiesced to the petition of the defendants, and it is the belief of the plaintiff herein that the defendants acted conspiratorially to deny the plaintiff, Jimmie L. Wilson, of his constitutional rights asserted herein." It is alleged that it was "the ultimate goal of the defendants in this cause to destroy the plaintiff's legal practice, and to damage his ability to be re-elected to public office by their continuous and unrelenting persecution under color or law." Mr. Wilson and his attorneys point to no evidence to support these claims, and the only circumstance that might cause him to believe what he says is that these individuals did not ultimately agree with his position which he took in this proceeding which was working its way, albeit slowly, through the justice system.

After the case was filed in federal court in the Eastern District of Arkansas, the judge to whom it was assigned, George Howard, held a telephone conference call with counsel and advised that, since the federal court now had jurisdiction of the case, it did not appear that the temporary restraining order requested by Mr. Wilson was necessary. He

---

5. The committee contends that Judge Neal was disqualified from hearing the case because he was a law partner of Mr. Wilson until some time in 1988 and, in fact, was one of the attorneys representing him in the very criminal proceeding which this disbarment proceeding is all about. It is contended that he, in fact, received, either in behalf of himself or in behalf of a client, some of

the funds that were wrongfully obtained by Mr. Neal from the Farmers Home Administration, and that he, by stipulation, testified by letter in the criminal trial.

6. The court will collectively refer to these parties as "the State."

also advised counsel that he had had a discussion with Judge Lineberger by telephone earlier that day and that Judge Lineberger recognized that his jurisdiction had ended and that he did not intend to proceed with the trial which was to have commenced that day. Counsel agreed that the restraining order was not necessary, under the circumstances, so no further action was taken other than the requirement of a cost bond and some discussion about proceedings that would follow.

While the files have multiplied almost exponentially by papers submitted by the lawyers since that time, little of a substantive nature has occurred during the more than nine months this case has been sitting in this court. Soon after the case was removed, a motion to remand pointing out reasons why this court did not have subject matter jurisdiction was filed, but no action was taken on it before Judge Howard recused. The file was received by this judge on the afternoon of March 11, 1996.

***Motion to Remand.***

The State requests the remand of the disbarment action to the Phillips County Circuit Court from which it was removed on June 13, 1995. The State asserts that the removal was improvident for the following reasons: (1) the matters sought to be removed are not civil actions within the meaning of the federal removal statutes and federal removal jurisprudence; (2) no federal question appears on the face of the state court complaint; (3) the petition for removal is time barred; and, (4) there are a number of procedural irregularities with the removal petition itself.

Wilson opposes remand arguing that removal was both timely and proper under the applicable removal statutes. Additionally, Wilson argues that the disbarment proceedings are quasi criminal in nature and subject to constitutional safeguards. According to Wilson, the alleged violation of these constitutional safeguards states a federal cause of action and establishes the jurisdictional nexus with the petition to remove. The second amended petition for removal asserts that removal is based upon 28 U.S.C. § 1443 and § 1446(b).

"The right to removal from a state court to a federal court exists only in certain enumerated classes of actions, and in order to exercise the right of removal, it is essential that the case be shown to be one within one of those classes." *Schwinn Bicycle Co. v. Brown,* 535 F.Supp. 486, 487 (W.D.Ark. 1982) (citations omitted). The removal statutes are strictly construed in favor of state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). Removal is effected when the notice of removal is filed in state court. *Anthony v. Runyon,* 76 F.3d 210 (8th Cir. 1996).

The court has the duty to fully consider the pleadings filed in this matter and determine whether subject matter jurisdictions exists. Any action taken by a federal court which lacks subject matter jurisdiction is a nullity and either party, even the party that invoked the jurisdiction of the court, can attack jurisdiction at any time even after judgment is rendered against him. *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

When determining whether removal is proper, a court may only examine the face of the complaint and cannot rely on an anticipated defense raised by the defendants. *Franchise Tax Board of the State of Cal. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (well-pleaded complaint rule). A federal question must be an essential element of the plaintiff's complaint to provide grounds for removal. *Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 127, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974). The plaintiff is, then, master of the complaint and can generally avoid federal jurisdiction by omitting claims that arise under federal law. *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936).

The state court complaint at issue asserts that Wilson violated the ethical standards for his profession and that disbarment is warranted under the applicable Arkansas state rules and procedures regulating professional conduct. The complaint does not rely upon

the Constitution, laws, or treaties of the United States.

■ The only federal question raised in this case is by the defendant. Removal is therefore not proper, *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987), unless an exception to the well-pleaded complaint rule applies. *Rogers v. Rucker,* 835 F.Supp. 1410 (N.D.Ga.1993). Section 1443 provides a statutory exception to the well-pleaded complaint rule for certain civil rights actions. *Id.* at 1412.

However, this action does not fall within the class of cases removable under § 1443(1). Section 1443(1) provides for the removal by a defendant of any civil action or criminal prosecution "[a]gainst any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof...." 28 U.S.C. § 1443(1).

There are two broad restrictions upon removal under § 1443(1). "First, removal is limited to cases involving 'a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof,' and second, the petitioner for removal must show that he 'is denied or cannot enforce [such a right] in the courts of such State.'" *Bar Association of Baltimore City v. Posner,* 391 F.Supp. 76, 79 (D.Md.1975). *See also Johnson v. Mississippi,* 421 U.S. 213, 95 S.Ct. 1591, 44 L.Ed.2d 121 (1975).

■ The Supreme Court has held that the phrase "any law providing for equal civil rights" must be construed to mean any law providing for specific civil rights stated in terms of *racial* equality. *Georgia v. Rachel,* 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966). "Thus, removal has been held improper in a variety of cases involving alleged infringements of fundamental federal rights" on the grounds that these rights are not stated in terms of racial equality. *Bar Association of Baltimore City v. Posner,* 391 F.Supp. 76, 79 (D.Md.1975).

■ To show that he is being denied or cannot enforce his equal rights in the courts of Arkansas, Wilson must show either

that there is a basis for a firm prediction that such rights [of racial equality] will be denied in state court or that the pendency of the prosecution without more, is a deprivation of such a federally protected right. It is not enough to show that he has a defense with more or less hope of its successful assertion in an impartial tribunal; he must show that his federally secured right of racial equality is denied by the pendency of the proceeding or "by reasons of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by ... bringing the defendant to trial in the state court."

*State of South Carolina v. Moore,* 447 F.2d 1067, 1070 (4th Cir.1971). *See also Greenwood v. Peacock,* 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). Allegations that an individual is being denied equal protection by discriminatory prosecution of professional misconduct and assorted allegations of denial of due process have been held insufficient to support removal under this section. *Bar Association of Baltimore City v. Posner,* 391 F.Supp. 76, 79 (D.Md.1975).

Wilson contends his removal petition raises the following issues: (1) denial of due process; (2) denial of equal protection; (3) violation of his citizenship rights under Section 2 of the Voting Rights Act of 1965, as amended, and the Thirteenth Amendment of the United States Constitution; (4) violation of federally established rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985; (5) violation of the doctrine of equitable estoppel/double jeopardy; and (6) violation of his constitutional rights of the United States Constitution insomuch as the rules, procedures, and laws under which petitioner was being prosecuted were violative of the United States Constitution. *Wilson's Brief* of July 17, 1995, at 7. Wilson takes the position that the Arkansas Supreme Court's action in appointing a special chancellor to the Phillips Circuit Court to preside over *Neal v. Wilson* violated the federal Voting Rights Act and the Thirteenth Amendment to the United States Constitution.

Wilson's allegations regarding the denial of constitutional rights generally are clearly insufficient to support removal under § 1443. *Johnson v. Mississippi,* 421 U.S. 213, 219, 95 S.Ct. 1591, 1595, 44 L.Ed.2d 121 (1975) (Claims that an action "will violate rights under constitutional or statutory provisions of general applicability or under statutes not protecting against racial discrimination, will not suffice."); *Doe v. Berry,* 967 F.2d 1255, 1257 (8th Cir.1992) (42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) do not meet the test and cannot support removal under § 1443), *cert. denied,* 507 U.S. 911, 113 S.Ct. 1258, 122 L.Ed.2d 656 (1993). However, courts have held that certain of the statutes relied upon by Wilson qualify as laws providing for "equal civil rights." For instance, the Voting Rights Act confers rights specifically in terms of racial equality and has been held to support removal under § 1443. *See e.g., Smith v. Winter,* 717 F.2d 191 (5th Cir.1983); *Jackson v. Riddell,* 476 F.Supp. 849 (N.D.Miss.1979). Additionally, § 1981 qualifies under the statutory definition. *Greenwood v. Peacock,* 384 U.S. 808, 825, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966).

■ Assuming for the sake of argument that he has sufficiently asserted a cause of action under a statute securing racial equality, which the court does not believe he has, Wilson still has not alleged facts which indicate he would be unable to adequately exercise or enforce his rights under these statutes in state court. *See Bar Association of Baltimore City v. Posner,* 391 F.Supp. 76, 83 (D.Md.1975). As the Supreme Court has stated, to show that he is being denied or cannot enforce the specified federal rights in the courts of the state, Wilson must normally show "that the 'denial be manifest in a formal expression of state law,' ... such as a state legislative or constitutional provision, 'rather than a denial first made manifest at the trial of the case.'" *Johnson,* 421 U.S. at 219, 95 S.Ct. at 1595 (citations omitted). Clearly, Wilson has failed to make the required showing, so removal is not supported by the provisions of § 1443.

Additionally for the reasons stated below, we believe the removal was untimely. Section 1446 sets forth the procedures to be used for removal of actions from state to federal court. Section 1446(b) contains two separate time limitations with respect to the removal of civil cases. First, if the initial pleading states a basis for federal jurisdiction, a notice of removal "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based...." 28 U.S.C. § 1446(b). Second, if the case stated in the initial pleading was not removable, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable...." *Id.*

The state court disbarment proceeding was filed on October 9, 1991. The action was removed on June 13, 1995. Clearly removal was untimely unless the second thirty day period set forth in § 1446(b) is applicable. Wilson argues that it is. Wilson asserts that this action first became removable when the Arkansas Supreme Court issued the "administrative order ... affirming its appointment of the Honorable Judge John Lineberger as Special Judge in the cause of *Neal v. Wilson,* Phillips County Circuit No. CIV–91–147...." *Wilson's Brief* of August 25, 1995, at 1–2. In essence, Wilson argues the Arkansas Supreme Court's ruling constitutes "other paper" which converts the action into a removable action.

■ Generally, a non-removable action may only be converted into a removable action by "paper" resulting from some voluntary act of the plaintiff. *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 494 (5th Cir.1996); *Gaitor v. Peninsular & Occidental S.S. Co.,* 287 F.2d 252, 254 (5th Cir.1961) ("other paper" requires a voluntary act of the plaintiff); *Horton v. Scripto–Tokai Corp.,* 878 F.Supp. 902 (plaintiff must do something voluntarily to change the nature of the case and render it removable). It is a well established doctrine that a case may not be heard in district court when the only federal question posed is raised by a defense argument. *Caterpillar Inc. v. Williams,* 482 U.S. 386,

393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987).

■ The per curiam order of the Supreme Court of Arkansas issued on June 12, 1995, in response to James Neal's petition for writ of certiorari did not convert the otherwise unremovable case into a removable one. The opinion merely reaffirmed the validity of the court's appointment of a special circuit judge to hear the disbarment proceedings.

Judge Lineberger was appointed by the Arkansas Supreme Court to hear the case on May 3, 1994. The order assigning Judge Lineberger was for some reason not filed in the Phillips County case, *Neal v. Wilson,* until September 14, 1994. Judge Neal was elected on November 3, 1992, and assumed office shortly thereafter. Thus if any impropriety giving rise to a violation of the Voting Rights Act, or any other statute relied on by Wilson, occurred in connection with the appointment of Judge Lineberger, it occurred on May 3, 1994, or at the latest when the order of assignment was filed in Phillips County. It was the act of appointment not the issuance of the opinion on June 12, 1995, which allegedly violated Wilson's rights and purportedly made the disbarment action removable.

Wilson was well aware of the appointment of Judge Lineberger and in fact asked him to recuse. When Judge Lineberger refused, Wilson did not raise the issue with the Supreme Court but instead later asked Judge Neal to exercise jurisdiction over the case despite the fact that the Arkansas Supreme Court had assigned the case to another judge. The Arkansas Supreme Court then in ruling on the writ of certiorari declared Judge Neal's assumption of jurisdiction to be void because of their earlier appointment. This action did not begin the running of the thirty day period for removal. The removal was therefore untimely. An order will be entered remanding the disbarment action to the Phillips County Circuit Court.[7]

However, this decision does not end the case. As the court and the parties have recognized, the allegations of the combined petition for removal/complaint at law really encompassed two separate legal actions, the first action being the state court disbarment action which was removed. The second action consists of a federal cause of action for declaratory and injunctive relief based on the alleged constitutional violations. These allegations were presented in the form of a counterclaim and third party complaint. We will proceed to analyze the parties arguments concerning whether this court can legitimately proceed to deciding the merits of the action for declaratory and injunctive relief.

### *Younger v. Harris Abstention.*

The State takes the position, *inter alia,* that the court must abstain from exercising jurisdiction over the allegations of the counterclaim/third party complaint under the doctrine set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ In *Younger v. Harris* the Supreme Court "instructed federal courts that the principles of equity, comity and federalism in certain circumstances counsel abstention in deference to ongoing state proceedings." *Fieger v. Thomas,* 74 F.3d 740, 743 (6th Cir.1996). In the case of *Middlesex Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), a case that appears to be directly on point, the Supreme Court addressed the applicability of this doctrine to pending state disciplinary proceedings. The Court noted that *Younger* and "its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex,* 457 U.S. at 431, 102 S.Ct. at 2521. If *Younger* abstention applies it is not appropriate to address the merits. *Greening v. Moran,* 953 F.2d 301, 304 (7th Cir.1992), *cert. denied,* 506 U.S. 824, 113 S.Ct. 77, 121 L.Ed.2d 42 (1992). "To say that abstention is in order then is to say that federal courts should not address the merits, period. *Silence* by the federal court is the objective of abstention; the desirability of silence is the reason for abstention." *Greening,* 953 F.2d at 304.

---

7. The clerk will also be directed to refund to Wilson the $500 cost bond. Since 1988 the removing party has not been required to post a cost bond.

In *Middlesex,* a New Jersey attorney, Lennox Hinds, was being charged in a disciplinary proceeding with violating two sections of the Disciplinary Rules of the Code of Professional Responsibility as a result of statements he made during a press conference which were critical of an ongoing criminal trial and the trial judge's judicial temperament and racial insensitivity. *Middlesex,* 457 U.S. at 428, 102 S.Ct. at 2519. Instead of replying to the charges of the Ethics Committee, Hinds filed a suit in federal district court contending the disciplinary rules violated his First Amendment rights. Additionally, he asserted that the rules were facially vague and overbroad. *Middlesex,* 457 U.S. at 429, 102 S.Ct. at 2519–20.

In analyzing the applicability of *Younger* the Court applied the following threefold analysis: *"first,* do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; *second,* do the proceedings implicate important state interests; and *third,* is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. The Court answered each question affirmatively.

First, the court found the that under New Jersey law the disciplinary proceedings were judicial in nature. As the proceedings were judicial, the Court noted "the proceedings are of a character to warrant federal-court deference." *Id.,* 457 U.S. at 434, 102 S.Ct. at 2522. Second, the Court noted that the State of New Jersey "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Id.* "The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." *Id.* It also noted that the State's interest in the present litigation was demonstrated by the fact that the Ethics Committee, an agency of the New Jersey Supreme Court, was named as a defendant. *Id.*

Finally, it noted that Hinds had failed to even attempt to raise any federal constitutional challenges in the state proceedings. *Id.,* 457 U.S. at 435, 102 S.Ct. at 2522–23. Because Hinds has an " 'opportunity to raise and have decided by a competent state tribunal the federal issues involved' ... and because no bad faith, harassment, or other exceptional circumstances dictate to the contrary, federal courts should abstain from interfering with the ongoing proceedings." *Id.,* 457 U.S. at 437, 102 S.Ct. at 2524. *See also Fieger v. Thomas,* 74 F.3d 740 (6th Cir.1996) (federal district court should abstain from deciding constitutional challenge to state disciplinary rules where state disciplinary proceedings are ongoing); *Hirsh v. Justices of the California Supreme Court,* 67 F.3d 708 (9th Cir.1995) (abstention proper when a federal court complaint alleged the disciplinary system deprived attorneys of various constitutional rights, including due process, equal protection, the right to vote, and the right to court access).

The Arkansas Supreme Court has exclusive jurisdiction over the conduct of Arkansas attorneys and has the power to make "rules regulating the practice of law and the professional conduct of attorneys of law." Ark. Const. Amend. No. 28; *Dodrill v. Executive Director, Committee on Professional Conduct,* 308 Ark. 301, 824 S.W.2d 383 (1992); *Sexton v. Arkansas Supreme Court Comm. on Professional Conduct,* 299 Ark. 439, 774 S.W.2d 114 (1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 784 (1990). "Amendment 28 certainly put to rest for all time any possible question about the power of the courts to regulate the practice of law in the state. There can be no doubt that the power of the judicial department, acting through this court, is, in this respect, exclusive and supreme under this amendment, if the power was not already inherent in the courts." *McKenzie v. Burris,* 255 Ark. 330, 340, 500 S.W.2d 357 (1973).

"The Rules of Professional conduct are the substantive rules governing the bar." *Sexton v. Supreme Court Comm. on Professional Conduct,* 297 Ark. 154A, 154B, 761 S.W.2d 602 (1988). The Arkansas Supreme Court Committee on Professional Conduct

acts as an arm of the Supreme Court in matters relating to the supervision and licensing of Arkansas attorneys. However, the Committee does not exercise judicial power; rather the Committee's function "is in the nature of an administrative agency, which is not bound by the rules of the courts." *Sexton v. Arkansas Supreme Court Comm. on Professional Conduct*, 299 Ark. 439, 446, 774 S.W.2d 114 (1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 784 (1990). The Committee on Professional Conduct enforces the substantive rules. *Sexton*, 297 Ark. at 154B, 761 S.W.2d 602.

The rules governing the action of the Committee and setting forth its procedures provides that, in the event a majority of the committee votes for disbarment, an action for disbarment will be filed with the Clerk of the Circuit Court of the county in which the attorney resides, or in which the alleged violation was committed. *Procedures of the Court Regulating Professional Conduct of Attorneys at Law* § 5(E)(5) & § 5(G). The action proceeds as an action between the Executive Director and the attorney. *Id.* § 5(G)(1). The proceedings are to be held in compliance with the Arkansas Rules of Civil Procedure. *Id.* If the Circuit Judge finds a violation of the ethical rules he may caution, reprimand, suspend or disbar the attorney. *Id.* at § 5(G)(2). If the attorney does not agree with the decision, he may appeal to the Arkansas Supreme Court. *Id.* at § 5(H). The appeal is heard *de novo*. *Id.* at § 5(H)(3).

■ We conclude application of the *Middlesex* threefold test requires abstention in this case. First, the disbarment proceeding is clearly judicial in nature. *New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 371, 109 S.Ct. 2506, 2520, 105 L.Ed.2d 298 (1989); *Middlesex*, 457 U.S. at 433, 102 S.Ct. at 2522. *See also Fieger*, 74 F.3d at 744 (Even if state disciplinary procedures were characterized as administrative, abstention would be appropriate under *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986).); *Hirsh*, 67 F.3d at 712; *Greening*, 953 F.2d at 304. Second, it cannot be disputed that the state has a strong interest in maintaining and assuring the professional conduct of the attorneys it licenses. "The fact that [Wilson] poses a constitutional challenge to the substance of the rules of professional conduct as well as the procedures adopted to enforce them does not overcome [Arkansas's] interest." *Fieger*, 74 F.3d at 744.

Finally, Wilson's constitutional challenges can be determined in the state court proceedings. "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex*, 457 U.S. at 431, 102 S.Ct. at 2521. In fact, the Supreme Court has held abstention to be appropriate "unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 425–26, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979).

The Arkansas Supreme Court has heard and ruled on constitutional challenges presented by attorneys during disciplinary hearings. *See e.g., Arens v. Committee on Professional Conduct of the Supreme Court of Arkansas*, 307 Ark. 308, 820 S.W.2d 263 (1991) (Fifth and Fourteenth Amendments to the United States Constitution); *Sexton v. Arkansas Supreme Court Comm. on Professional Conduct*, 299 Ark. 439, 774 S.W.2d 114 (1989) (procedural due process), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 784 (1990); *Eaton & Benton v. Supreme Court of Arkansas Comm. on Professional Conduct*, 270 Ark. 573, 607 S.W.2d 55 (1980) (regulations on legal advertising did not violate the First Amendment), *cert. denied*, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981).

Wilson strenuously argues that *Younger* is inapplicable because the state officials are proceeding with the disciplinary proceedings in bad faith. *See e.g., Bishop v. State Bar of Texas*, 736 F.2d 292 (5th Cir.1984) (claim that state bar prosecuted disciplinary proceedings against an attorney for many years was sufficient to state a claim that the disciplinary proceedings were taken in bad faith and for an improper motive). According to Wilson "[b]ad faith and the denial of due process can clearly be imputed to the respondents from

the facts of this case." *Wilson's Brief* of July 17, 1995 at 11.

In support, Wilson asks the court to consider the following facts: (1) the disciplinary action was commenced approximately a decade after the sanctionable conduct was committed; (2) there have been two trials in this case; (3) although the Committee prevailed in the second trial they objected to the particular judge presiding in the case and appealed via a writ of certiorari; (4) Wilson's request to do discovery to substantiate his claim of selective prosecution was denied by the judge appointed by the Supreme Court; (5) a special judge was appointed despite the fact that a regularly elected circuit judge had not recused or otherwise disqualified himself from the case; (6) the appointment of a special judge was in violation of Arkansas law and an improper incursion on the jurisdiction of the regularly elected circuit judge; (7) Wilson's political and social activist activities have incurred considerable ire from persons closely connected with the Committee; (8) the Committee asked for and received a ruling eliminating the statute of limitations in this case; (9) all rules regulating the issuance of writs of certiorari were bypassed for the Committee; (10) the action was commenced while Wilson was in prison and did not have the opportunity to defend himself; (11) absolute disbarment was requested when lesser sanctions are available; (12) the fact that the Committee took an appeal from a favorable decision; and (13) the open hostility of the State toward Wilson as exhibited by its action, language and conduct in the court. *Id.* at 11–13. *See also Wilson Brief* of August 25, 1995, at 27–30.

Wilson also contends that this case is a reincarnation of the case of *Lewellen v. Raff,* 843 F.2d 1103 (8th Cir.1988). Wilson argues the same environment that gave rise to *Lewellen* has resurfaced to give rise to the instant case. According to Wilson, "[t]here is absolutely no reason but bad faith, harassment, vindictiveness, and racial animosity that would prompt the Supreme Court Committee on Professional Conduct to appeal a decision that was favorable to the Committee and subject Wilson to a third trial on disbarment." *Wilson Brief* of July 17, 1995, at 17.

In Wilson's view, the State's problem with the decision is quite simple; The decision "was not harsh enough and it was rendered by a black judge to a black defendant." *Id. See also Wilson Brief* of August 25, 1995, at 27–28 (extraordinary act in disregard for the constitutional authority of Judge Neal, extraordinary use of administrative authority of the court to usurp the authority of a duly elected judge, and the resulting denial of the right to franchise).

In *Lewellen* the Eighth Circuit was reviewing the decision of a district court to preliminarily enjoin the prosecution of a state criminal trial. The court noted that "[t]he allegations in Lewellen's complaint painted a picture of pervasive racism and discriminatory treatment of blacks in the Lee County court system." *Lewellen,* 843 F.2d at 1110. The evidence also described an environment in which Lewellen would not be assured adequate vindication of due process and equal protection. *Id.* at 1111.

The Eighth Circuit in reviewing the district court's findings under the clearly erroneous standard upheld the injunction under the bad faith and harassment exception to the *Younger* abstention doctrine. *Id.* at 1112–113.

■ Nothing presented to this court indicates that the environment present in *Lewellen* is present in this case. The initiation of disbarment proceeding was in response to Wilson's pleading guilty to criminal conduct involving dishonesty, to say the least. The Committee's seeking of a writ from the Arkansas Supreme Court was in response to a legitimate concern and does not constitute evidence of bad faith. Judge Lineberger had been appointed to preside over the case by the Arkansas Supreme Court and in fact had been exercising that jurisdiction. Judge Neal at the behest of Wilson attempted to wrest jurisdiction over the case from Judge Lineberger by jumping into the fray and hearing the case on the merits prior to Judge Lineberger issuing a decision on the merits. He obviously knew that the case had been assigned by the state's highest court to Judge Lineberger and that it was set to be heard in June.

We have already discussed in great detail the factual background of this case and will not repeat that discussion here. As our discussion of the facts and history of the present controversy indicates, Wilson's characterization of the events is simply inaccurate or tendentious. The record before us is extensive. We simply find no evidence of "bad faith, harassment, or some other circumstances that would make abstention inappropriate." *Middlesex,* 457 U.S. at 435, 102 S.Ct. at 2523. *See also Fieger,* 74 F.3d at 750. Other than the bare assertions of Wilson, there is no evidence that any of the decisions made by the members of the ethics committee or the judges of the Arkansas Supreme Court were motivated by bad faith, racial discrimination, or intent to harass. His contentions in this respect boil down to little more than a belief by him that, since the state actors disagree with him and his lawyers, they must have racially discriminatory motives. That simply doesn't follow.

Quite simply, the allegations are insufficient to establish the extraordinary circumstances under which *Younger* abstention is inappropriate. *See e.g., Hirsh,* 67 F.3d at 713–14; *Berger v. Cuyahoga County Bar Ass'n,* 983 F.2d 718, 724 (6th Cir.1993), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993). We believe the case before us falls squarely within the abstention doctrine set forth in *Younger v. Harris* and applied by the Supreme Court to constitutional challenges to pending state disciplinary proceedings in *Middlesex.* Therefore, the allegations of the counterclaim/third party complaint will be dismissed by a separate order entered concurrently herewith. *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

To the extent Wilson's arguments regarding the appointment of a special judge by the Arkansas Supreme Court can be read to assert claims unrelated to the disbarment proceeding, we will address the parties' arguments regarding the court's jurisdiction to review the decision of the Arkansas Supreme Court.

**8.** *See also* 28 U.S.C. § 1738.

### *Rooker–Feldman Doctrine.*

Alternatively, the State takes the position that the court must dismiss the allegations of the counterclaim/third party complaint under the *Rooker–Feldman* doctrine.[8] We believe that if this doctrine has any applicability it is only to the decision of the Arkansas Supreme Court regarding the appointment of Judge Lineberger to the Phillips County case.

The Court of Appeals for the Eighth Circuit recently examined this doctrine and summarized it in the following terms:

The *Rooker–Feldman* doctrine states that district courts do not have subject matter jurisdiction over challenges to state court decisions in judicial proceedings. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983). The only court with jurisdiction to review decisions of state courts is the United States Supreme Court. A federal district court has jurisdiction over general constitutional challenges if these claims are not inextricably intertwined with the claims asserted in state court. A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. In other words, *Rooker–Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.

*Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995) (citations omitted). *See also LaNave v. Minnesota Supreme Court,* 915 F.2d 386, 388 (8th Cir.1990), *cert. denied,* 500 U.S. 923, 111 S.Ct. 2028, 114 L.Ed.2d 113 (1991). The doctrine "is broader than claim and issue preclusion because it does not depend on a final judgment on the merits." *Charchenko,* 47 F.3d at 983 n. 1.

Wilson argues the *Rooker–Feldman* doctrine is inapplicable on the grounds that the act of the Arkansas Supreme Court in granting the writ of certiorari and voiding Judge Neal's ruling was administrative rath-

er than judicial. We reject this argument. Perhaps the act of appointing a special judge in the first instance can be regarded as administrative rather than judicial; however, the act of declaring the decision of one judge to be void on the grounds that a different judge was given authority over the case is clearly judicial in nature. Thus, the application of the *Rooker–Feldman* doctrine precludes review.

*Conclusion.*

It makes no difference to this court whether Mr. Wilson is ultimately disbarred—it is simply none of this federal court's business. However, the simple fact is that this court has no removal jurisdiction of this case and never did, and didn't during any of the 9 month period when the pendency of this matter in this court served to stall the proceedings. This court is convinced that it is in the interest of all parties and in the public interest for this matter which has been going on in one form or another for well over a decade, to come to a conclusion one way or the other.

For the reasons stated above, the disbarment action will be remanded to the Circuit Court of Phillips County, Arkansas. Additionally, the court will abstain from deciding the issues raised in the counterclaim/third party complaint and that portion of the case will be dismissed. A separate order in accordance herewith will be concurrently entered.

### ORDER OF REMAND & JUDGMENT

On this 14th day of March, 1996, the court finds for the reasons stated in a memorandum opinion of even date as follows:

(1) The case of *Neal v. Wilson,* Civ. No. 91–147 which was removed to this court on June 13, 1995, was improvidently removed and should be and hereby is remanded to the Circuit Court of Phillips County, Arkansas. The clerk of this court is directed to send a certified copy of this order to the clerk of the state court. The clerk is also directed to refund to Jimmie L. Wilson the cost bond in the amount of $500 which was deposited at the time of removal.

(2) The court will abstain from deciding the issues raised in the federal court action for declaratory and injunctive relief (referred to as the counterclaim/third party complaint) and this portion of the case is dismissed. Alternatively, the court holds that application of the *Rooker–Feldman* doctrine precludes review.

IT IS SO ORDERED.