CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA,
et. al., Plaintiffs,

v.

OHIO ELECTIONS COMMISSION,
et al., Defendants.

No. C2–01–0028.

United States District Court,
S.D. Ohio,
Eastern Division.

March 5, 2001.

Matthew A. Kairis, Brian Seldene, Jones, Day, Reavis & Pogue, Columbus, OH, for plaintiff.

Judith L. French, Sharon A. Jennings, Ohio Attorney General's Office, Columbus, OH, for defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court on the Motion to Dismiss of the Individual Defendants who are members of the Ohio Elections Commission. (Doc. # 13). This action was brought by Plaintiffs, the Chamber of Commerce of the United States of America ("Chamber of Commerce") and an anonymous individual ("John Doe") seeking expedited declaratory relief against Defendants the Ohio Elections Commission (the "Elections Commission") and the members of the Elections Commission. (Doc. # 11).[1] Specifically, the Plaintiffs request that this Court declare that O.R.C. §§ 3517.21(B) and 3599.03(A) are unconstitutional on their face and that such statutes do not permit the Elections Commission to regulate independent speech that does not meet the bright line standard of "express advocacy" allegedly set forth in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). (*Id.*). Jurisdiction for this matter is based on 28 U.S.C. §§ 1331, 2201 and 2202.

The Defendants have moved the Court to dismiss the action on a number of bases including a lack of subject matter jurisdiction. Alternatively, the Defendants assert that this Court should abstain from proceeding based on principles of federal-state comity. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the Defendants' Motion.

## I. BACKGROUND

In the fall of 2000, the Chamber of Commerce and other groups sponsored a series of television advertisements concerning candidates for judicial office in several states, including Ohio. (Doc. # 11. at ¶ 13). The Chamber of Commerce alleges that the ads do not contain express election advocacy, such as "vote for" or "defeat" nor do they exhort the voters to do anything. (*Id.* at ¶ 16).

On October 19, 2000, the Elections Commission convened a probable cause panel consisting of three Elections Commission members to address a Complaint brought by Common Cause/Ohio against Citizens for a Strong Ohio ("CSO") alleging violations of the state statutes. (*Id.* at ¶ 17). Common Cause/Ohio alleged that CSO's television advertisements concerning issues associated with the November 2000 Ohio Supreme Court elections were in violation of Ohio Election laws and were subject to regulation by the Elections Commission. The Commission Panel dismissed the Complaint ruling that the advertisements failed to meet the "express advocacy" standard.

On November 1, 2000, Intervenor Alliance for Democracy filed its own complaint against CSO and the Ohio Chamber of Commerce with the Elections Commission. Subsequently, Intervenor Common Cause/Ohio filed a complaint against the Chamber of Commerce. The Complaints seek judgments from the Elections Commission that the ads in question violate two Ohio election statutes, O.R.C. §§ 3517.21(B) and 3599.03(A). (*Id.* at ¶ 17).

On November 6, 2000, the Elections Commission considered both complaints, and found that it had jurisdiction to regulate the ads.

## II. STANDARD.

The Defendants have moved to dismiss this action under Rules 12(b)(1) and

---

1. The Court notes that the Elections Commission has been dismissed as a party to this suit by separate Order issued on this same day.

12(b)(6) of the Federal Rules of Civil Procedure.

Defendants first move for dismissal pursuant to Rule 12(b)(1). Because the defendants have mounted only a facial challenge to the Complaint,[2] not dependent upon facts, the Court applies the same standard applicable to Rule 12(b)(6) motions. *See Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990).

A motion to dismiss for failure to state a claim pursuant Rule 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All well-pleaded allegations must be taken as true and be construed most favorably toward the non-movant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mayer v. Mylod,* 988 F.2d 635, 637 (6th Cir.1993). While a court may not grant a Rule 12(b)(6) motion based on disbelief of a complaint's factual allegations, *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990), the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless there is no law to support the claims made, the facts alleged are insufficient to state a claim, or there is an insurmountable bar on the face of the complaint.

## III. ANALYSIS.

Before the Court are the claims of the Chamber of Commerce and of John Doe. The Defendants argue that these claims should be dismissed for various reasons, including lack of jurisdiction. The statutes challenged by the Chamber of Commerce and John Doe have been enacted by the Ohio General Assembly. As described below, unless state statutes are, on their face, unconstitutional, federal courts are reluctant to interfere with on-going state proceedings or to construe issues of state law, out of regard for comity between federal and state courts. The Court concludes that it has jurisdiction over the case brought by the Chamber of Commerce but that under the *Younger* abstention doctrine, it must abstain from hearing the Chamber of Commerce's claims in deference to the underlying Elections Commission proceeding. Similarly, the Court concludes that, while it has jurisdiction over John Doe's claim, it should abstain from ruling on this claim under the *Pullman* abstention doctrine, due to the possibility that a state court (or Elections Commission) ruling could render unnecessary or substantially modify the constitutional question raised by John Doe.

The Complaint in this action does not explicitly raise either a facial constitutional challenge or an "as applied" constitutional challenge. The differences between these types of challenges are important for the present purposes. In an "as-applied" challenge, the plaintiff contends that application of the statute in the particular context in which he or she has acted, or which he or she proposes to act, would be unconstitutional. If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional. In a facial challenge, generally the plaintiff must prove that there are no set of circumstances in which the statute's applica-

---

**2.** Throughout this Opinion and Order, the Court shall refer to the First Amended Complaint (Doc. # 11) as the "Complaint."

tion would be constitutional. However, a facial challenge to the overbreadth or vagueness of a statute requires the plaintiff to demonstrate that the statute would be unconstitutional in a substantial number of circumstances to which it applies. If a statute is unconstitutional on its face then the State may not enforce the Statute in any circumstance. *See, e.g., Watchtower Bible & Tract Soc'y of New York, Inc. v. Village of Stratton,* 240 F.3d 553, 561–62 (6th Cir.2001).

At oral arguments, the Plaintiffs clarified their position that they are mounting only a facial challenge to the constitutionality of the statutes in question. Specifically, the plaintiffs request that the Court declare that the Ohio election statutes in question are unconstitutional to the extent that they apply to political ads that do not contain any language of express advocacy. The Plaintiffs would have the Court construe the statutes narrowly pursuant to the standard enunciated in *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), so as to avoid the alleged constitutional infirmity.

## A. Subject Matter Jurisdiction.

■ Article III of the Constitution limits a federal court's jurisdiction to "cases and controversies." This limitation has been interpreted to mean that a court cannot decide legal issues in the abstract. Each case or controversy requires at least two parties with adverse interests who have a current and real dispute which is susceptible to a judicial resolution. Courts may not decide legal issues based on hypothetical disputes, or disputes that have or may not come to pass. In addition, a court cannot hear a case unless the party bringing it has standing, which requires that the party have a real injury, caused by the opposing party, that can be redressed by a court ruling. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The Defendants argue that the Court lacks jurisdiction over the Chamber of Commerce's claim because they assert that the Court cannot meaningfully construe the constitutionality of the Ohio election statutes in a manner that will redress the concerns alleged by the Plaintiffs. Similarly, the Defendants argue that the Court lacks subject matter jurisdiction over John Doe's claim because John Doe has not suffered injury in fact and his claims are based on hypothetical circumstances that have not yet come to pass. The Court shall address the arguments pertaining to each party, in turn.

## 1. Jurisdiction Over the Chamber of Commerce's Case.

■ The Defendants primary argument that the Court lacks jurisdiction is that the relief sought by the Chamber of Commerce would not redress its alleged the injury, namely the chill on its First Amendment rights.[3] Specifically, the Defendants argue that the Chamber of Commerce merely seeks to have the Court compel the Elections Commission to administer Ohio's election laws in compliance with the *Buckley* standard. Such an order, the Defendants argue, would not help to clarify whether the Elections Commission had authority to regulate the types of ads about which the Chamber of Commerce is concerned. Specifically, the Defendants state that such an order would "not answer the question of how these

**3.** The Defendants argue that because the Elections Commission has not made ruling on the underlying action, this matter is not ripe for review in that the Elections Commission has not stated its formal position in this case. (Doc. # 33 at pp. 4–5). This argument fails to the extent that it conflates the notion of a facial challenge with an as-applied challenge.

statutes should be applied to either the advertisements currently at issue before the Elections Commission or any future advertisement that the Chamber of Commerce may choose to run." (Doc. # 13 at 12). Thus, according to the Defendants, even if the Court were to grant the relief sought by the Chamber of Commerce, it would not help to inform the Chamber of Commerce which of its current or future ads are subject to regulation. In support of this argument, the Defendants rely on the Seventh Circuit decision in *Wisconsin Right to Life v. Paradise*, 138 F.3d 1183 (7th Cir.1998).

The problem with the Defendants' argument is that a facial challenge to Ohio's election laws does not present the problems the Defendants suggest. Ordinarily, when a statute is unconstitutional "on its face" the statute is invalidated in its entirety. *See City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). In this case, if the Court were to invalidate the statutes in their entirety, the Court's opinion would redress the concern of the Chamber of Commerce as to whether its speech activities are subject to regulation. Thus, the Court's ruling would eliminate the Chamber of Commerce's uncertainty about which of its ads would be regulated and lift any potential chill on the Chamber of Commerce's First Amendment rights.

Second, even if the Court found that the statutes were only partially invalid, or construed the statutes narrowly to limit their scope to that permitted by the Constitution, the Defendants' argument still fails because it turns on the premise that every future case before the Election Commission would require a nuanced factual inquiry. Assuming for the sake of argument

that the Court renders a narrowing construction of the state statute in question, such a construction is not advisory to the extent that it distinguishes between those cases which clearly satisfy the relevant constitutional standard from those which do not.

Courts have long recognized that facial challenges serve the purpose of providing certainty to parties whose speech activities are potentially chilled by the uncertainty of the statute's scope. *See, e.g., Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (stating that laws are unconstitutionally vague if they fail "to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"). Thus, the Court rejects the Defendants' argument that the relief requested does not present a justiciable controversy.

**2. John Doe.**

█ The Defendants argue that John Doe has failed to establish standing and that his claims are not ripe for adjudication. The Defendants argue that the John Doe's claims are not ripe because (1) it is unclear that the organization to which he contributes ever will have the statutes enforced against it and (2) this Court's ruling on the merits will redress such a future hypothetical dispute. The Court rejects this latter argument for the reasons stated above. The Court addresses the former argument below.

Article III of the U.S. Constitution requires that a plaintiff prove three elements to establish standing: (1) that he or she suffered an injury in fact, which is both concrete and actual or imminent; (2) that the injury is caused by defendants' conduct; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

In addition, before this Court may hear a case under Article III of the Constitution the claim must involve a ripe controversy. "[R]ipeness is peculiarly a question of timing," *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in "'clean-cut and concrete form.'" *Renne v. Geary,* 501 U.S. 312, 322, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) (quoting *Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 584, 67 S.Ct. 1409, 91 L.Ed. 1666, (1947)).

The ripeness requirement is relaxed somewhat in cases involving a facial challenge to a statute which implicates First Amendment values. *See, e.g., Martin Tractor Co. v. Federal Election Comm'n,* 627 F.2d 375, 380 (D.C.Cir.), *cert. denied,* 449 U.S. 954, 101 S.Ct. 360, 66 L.Ed.2d 218 (1980). Thus, in the context of a First Amendment facial challenge, "[r]easonable predictability of enforcement or threats of enforcement, without more, have sometimes been enough to ripen a claim," *Martin Tractor,* 627 F.2d at 380; *see also Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298–99, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). The primary reasons for relaxing the ripeness analysis in this context is the chilling effect that potentially unconstitutional burdens on free speech may occasion. *Martin Tractor,* 627 F.2d at 380.

In this case, John Doe alleges that he is a citizen of the State of Ohio who is not a member or contributor to the Chamber of Commerce. (Doc.# 11 at ¶ 1). Doe has contributed to an organization that publishes independent speech addressing issues in a political campaign without expressly advocating the election or defeat of a candidate. Doe understood in the past that these speech activities were not subject to regulation under *Buckley* but now understands that in the underlying Elections Commission proceeding, the Elections Commission has indicated that it may regulate issue ads in the future. Indeed, while Doe did not contribute to the U.S. Chamber of Commerce's efforts publishing the advertisements at issue in the underlying Elections Commission action, he did contribute to the publication of similar independent advertisements published by a third party. (*Id.* at ¶ 14). Doe alleges that he would like to contribute to issue ads in the future provided he can do so anonymously and without regulation of his free speech rights. Doe represents that if issue ads will be regulated in the future, he will not contribute to such ads in the future. (*Id.* at ¶¶ 1, 21, 24).

The Court concludes that Doe's allegations are sufficient to establish his standing and that his claims are sufficiently ripe. In particular, his allegations that he has contributed to ads that are similar to the ads supported by the Chamber of Commerce and which the Elections Commission has found probable cause to regulate establishes a credible threat of enforcement sufficient for ripeness. *See Adult Video Ass'n v. United States Dept. of Justice,* 71 F.3d 563, 568 (6th Cir.1995) Doe's allegation that this threat has chilled his participation in future speech is sufficient to establish an injury in fact for the purposes of standing. *See id.* at 567.

Therefore, the Court concludes that it has jurisdiction over John Doe's claim.

## B. *Younger* Abstention.

■ The Defendants next assert that the Court should abstain from hearing this case under the doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 49, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* abstention doctrine counsels that a federal court not interfere with a pending state court action except in an unusual or drastic circumstance. The doctrine is founded upon the proper respect for the fundamental role of the states in our federal system and the acknowledgment that state tribunals are as equally adept at resolving important disputes as federal tribunals. *Younger*, 401 U.S. at 44, 54, 91 S.Ct. 746.

■ In *Younger v. Harris*, an indictment in state court had been returned against Harris for violation of the California's Criminal Syndicalism Act. Harris then brought suit in federal court seeking a declaration that the statute was unconstitutional on its face. *Id.* at 41, 91 S.Ct. 746. The District Court held that the state statute was unconstitutionally vague and enjoined the state from further prosecution against Harris. The United States Supreme Court reversed finding the decision of the District Court was an unwarranted intrusion by the federal courts into an ongoing state court proceeding. In reaching this conclusion, the Court stated that "the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Id.* at 51, 91 S.Ct. 746. Thus, the Court held that "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good faith attempts to enforce it." Rather, a person seeking to enjoin a state proceeding must show that an unconstitutional statute is being enforced in bad faith, for purposes of harassment, or some other unjustifiable circumstance that would warrant federal intrusion into a state proceeding. *Id.* at 54, 91 S.Ct. 746.

In this case, the Chamber of Commerce has made no allegations of bad faith, harassment, or any other circumstance that would justify equitable jurisdiction under *Younger*. In addition, the rationale of the Chamber of Commerce, that its First Amendment rights will be chilled, was expressly rejected in *Younger* as a justification for federal intrusion into a state proceeding. Further, the Supreme Court has held that the *Younger* doctrine applies with equal force to federal actions seeking injunctive relief and federal actions seeking declaratory relief. *See Samuels v. Mackell*, 401 U.S. 66, 71–72, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); *see also Carroll v. City of Mt. Clemens*, 139 F.3d 1072, 1074 (6th Cir.1998). In addition, the *Younger* doctrine has been expanded to apply to pending administrative proceedings that involve important state interests and that provide an adequate opportunity to raise constitutional claims. *See Parker D.M.D. v. Commonwealth of Kentucky*, 818 F.2d 504, 508 (6th Cir.1987). There is no question that the underlying Elections Commission proceedings are pending state administrative proceedings that involve important state interests.

The Chamber of Commerce argues, however, that *Younger* should not apply to the Elections Commission proceedings because those proceedings do not provide an adequate opportunity to present its constitutional challenges. The Chamber of Commerce argues that *Younger* abstention only applies to state administrative proceedings that guarantee that a federal plaintiff's constitutional claim can be resolved on direct appeal from the agency's decision. The Court disagrees.

In *Moore v. Sims,* 442 U.S. 415, 426, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Supreme Court held a federal court should abstain unless the federal plaintiff demonstrated that "state law clearly bars the interposition of the constitutional claims." *See also Pennzoil Co. v. Texaco, Inc.* 481 U.S. 1, 14, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). This heightened standard was applied by the Sixth Circuit in a case involving state attorney disciplinary proceedings. *Fieger v. Thomas* 74 F.3d 740, 746 (6th Cir.1996); *see also Cook v. Franklin County Municipal Court,* 596 F.Supp. 490, 503 (S.D.Ohio 1983) (Holschuh, J.). In *Fieger* the court concluded that an attorney failed to show that state attorney disciplinary proceedings clearly barred the interposition of his constitutional claims. Specifically, the plaintiff failed to show that the state adjudicatory body would have refused to consider his constitutional claims. In addition, the state procedures in question permitted discretionary appeal from the state agency rulings. This discretionary appeal was a sufficient opportunity for the plaintiff to present his constitutional claims despite the fact that he was not afforded an appeal of right. Contrary to the Chamber of Commerce's assertion, *Younger* abstention does not require that state law guarantee that a direct appeal is assured.[4]

■ Thus, this Court concludes that, under the *Younger* abstention doctrine, the proper standard for determining whether a federal plaintiff has an adequate opportunity to present a constitutional claim in the state proceeding is whether the plaintiff can demonstrate that state law would clearly bar the interposition of a constitutional claim. The Court concludes that the standard is not satisfied here.

■ First, as in *Fieger,* the record before the Court does not demonstrate that the Elections Commission would refuse to consider a claim that the election laws or their application were unconstitutional. *See Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) ("[I]t would seem an unusual doctrine . . . to say that the Commission could not construe its own statutory mandate in the light of federal constitutional principles.") Indeed, quite the contrary appears to be true from the allegations in the Complaint which demonstrate that the Elections Commission is cognizant of the constitutional standards the Plaintiffs seek to invoke here and takes them under consideration, even in the preliminary stages of its administrative process, in the decisions it renders. (Doc. # 11 at ¶¶ 18–20); *cf. Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 435, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) ("Abstention is based upon the theory that the accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.")

Second, the possibility that the Chamber of Commerce will not be able to present its constitutional challenge on appeal does not demonstrate that "state law clearly bars the interposition of its constitutional challenge." *Moore,* 442 U.S. at 426, 99 S.Ct.

---

**4.** The Court in *Fieger* acknowledged "sweeping language" used in *Parker D.M.D. v.Commonwealth of Kentucky,* 818 F.2d 504, 508 (6th Cir.1987) and relating to a "guarantee" of an appeal on which the Chamber of Commerce now relies. The *Fieger* Court did not apply that standard and limited the *Parker* holding based on the fact that the state agency procedures there, which related to the discipline of dentists, may not have permitted the interposition of constitutional law claims at the agency level and permitted an appeal from only a limited types of adverse rulings—those that involved license suspensions.

2371 The Chamber of Commerce asserts that there are two possible outcomes which could prevent adjudication of its constitutional claims in the course of the Elections Commission proceedings and subsequent state-court appeals. First, the Chamber of Commerce asserts that its opportunity to present its constitutional challenge could be thwarted if the Elections Commission concludes, in its discretion, that the Chamber of Commerce violated the statutes in question but that good cause has been shown not to impose any punishment or to refer the matter to the prosecutor. *See* O.R.C. § 3517(B)(3). Additionally, the Chamber of Commerce argues that its opportunity to raise its constitutional challenge could be thwarted if the matter is referred to a prosecutor, who could, within his or her discretion, decline prosecution. *See* O.R.C. § 3517(B)(2). In such cases, the Chamber of Commerce alleges it could be denied an opportunity to raise its Constitutional challenges on appeal.

The Court concludes that these possibilities, assuming they exist, do not demonstrate that "state law clearly bars the interposition of the Chamber of Commerce's constitutional claims." *See Fieger,* 74 F.3d at 746; *cf. Walter v. Cincione,* Case No. 2–00–1070 (S.D.Ohio Oct.6, 2000);[5] *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)("a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.") For these reasons, the Court rejects the Chamber of Commerce's argument that this Court should not abstain under the *Younger* doctrine.

Accordingly, the Court shall abstain from hearing the U.S. Chamber of Commerce's claim. Nonetheless, given the possibility that the Chamber of Commerce is unable to present its constitutional claim during the course of the Elections Commission proceedings, the Court does not dismiss the Chamber of Commerce's claims but rather, stays these proceedings pending a final resolution of the underlying Elections Commission actions and appeals therefrom.

As for the Plaintiff John Doe, because he is not a party to the underlying Elections Commission proceedings, the *Younger* doctrine does not apply to him. *See, e.g., Gottfried v. Medical Planning Servs., Inc.,* 142 F.3d 326, 329 (6th Cir.1998)("Younger abstention cannot apply to one ... who is a stranger to the state court proceeding.") Although the Court cannot abstain from hearing Doe's claims under the *Younger* doctrine, the Court must consider whether *Pullman* abstention applies to Doe's claims.

**C. *Pullman* Abstention.**

In *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court counseled federal courts to "abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." This doctrine has two main justifications: (1) principles of comity and the desire to avoid "needless friction with state policies," and (2) the policy favoring the avoidance of unnecessarily deciding federal constitutional questions. *Tyler v. Collins,* 709 F.2d 1106 (6th Cir.

**5.** The Chamber of Commerce and the Defendants have provided conflicting Ohio authority on the issue of whether the decision to refer a matter to a prosecutor is appealable to Court of Common Pleas. *Compare, e.g., Dewine v. Ohio Elections Commission,* 61 Ohio App.2d 25, 31, 399 N.E.2d 99 (Franklin Cty. 1978); *with Citizens to Save Northland v. Polairis Owners Association,* Case Nos. 99CVF12–10616, 00CVF06–4831, slip opinion, at 5–6 (Dec. 28, 2000 Franklin Cty. Ct. Common Pleas)(J. Sadler).

1983); *Gottfried v. Medical Planning Servs., Inc.*, 142 F.3d 326, 333 (6th Cir. 1998).

■ The Supreme Court has summarized the principles guiding a court's application of this abstention doctrine:

Abstention is, of course, the exception and not the rule, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), and we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment. [footnote omitted] We have held that "abstention ... is inappropriate for cases [where] ... statutes are justifiably attacked on their face as abridging free expression." *Dombrowski v. Pfister*, 380 U.S. 479, 489–490, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965). "In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler v. Koota*, 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967). Even if this case did not involve a facial challenge under the First Amendment, we would find abstention inappropriate. In cases involving a facial challenge to a statute, the pivotal question in determining whether abstention is appropriate is whether the statute is "fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question." *Harman v. Forssenius*, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 1181–1182, 14 L.Ed.2d 50 (1965); *see also Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (same). If the statute is not obviously susceptible of a limiting construction, then even if the stat-

ute has "never [been] interpreted by a state tribunal ... it is the duty of the federal court to exercise its properly invoked jurisdiction." *Harman, supra*, at 535, 85 S.Ct., at 1182; *see, e.g., Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971) ("Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim"); *Zwickler v. Koota*, supra, at 250–251, and n. 14, 88 S.Ct., at 396–397, and n. 14 (citing cases).

*City of Houston v. Hill*, 482 U.S. 451, 468, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Thus, although *Pullman* abstention is the exception, if the statute in question is fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, then abstention is appropriate.

This Court concludes that the statutes in question are fairly subject to an interpretation that will render unnecessary or substantially modify the federal constitutional question. This Court emphasizes that its role in applying the *Pullman* standard is merely a preliminary one. The Court's finding that the statute in question is "fairly subject" to constitutional interpretation does not necessarily mean that the statute is constitutional. It simply means that there is a fair interpretation of the statute, which a state court could render, that would comport with the Constitution.

**1. O.R.C. § 3599.03(A) is Fairly Susceptible to a Constitutional Interpretation.**

■ O.R.C. § 3599.03(A) provides, in pertinent part, that "no corporation, ... shall pay or use ... the corporation's money or property ... for or in aid of or opposition to ... a candidate for election or nomination to public office ..." The key

language is "in aid or opposition to." This language is fairly analogous to the "relative to" language interpreted by the U.S. Supreme Court in *Buckley*, 424 U.S. at 41–42, 96 S.Ct. 612. Consequently, the Court concludes that the statute is susceptible to the same limiting interpretation of the "relative to" language rendered by the Supreme Court in *Buckley* that prevented the provisions from operating in an unconstitutional manner. Thus, this Court concludes that O.R.C. § 3599.03(A) is fairly susceptible to an interpretation consistent with the express advocacy standard set forth in *Buckley*.

The allegations of the Complaint actually demonstrate this conclusion. Specifically, John Doe alleges that in the past, the Elections Commission has applied the statute in a constitutional fashion. He claims that only recently, in the underlying Elections Commission case involving the Chamber of Commerce, has any uncertainty arisen regarding the constitutionality of the statute in question. (Doc. # 11 at ¶ 1).

In addition, Doe alleges in the Complaint that the language of the statute in question is "very similar to [the language] construed in *Buckley*" and that the statutes "always have been understood to be subject to the First Amendment standard of 'express advocacy' announced in *Buckley*." (*Id.* at ¶ 11). Indeed, Doe provides an example of the Elections Commission's prior understanding: the October 19, 2000 hearing where "the Commission dismissed the complaint because the advertisement failed to meet the express advocacy standard." (*Id.* at ¶ 17). Further, Doe points to Ohio regulations that limit the notion of "expressly advocating" to the language found in the *Buckley* decision. (*Id.*)(citing O.A.C. § 111-3-04). Indeed, Doe alleges that "the Commission has not disputed that Ohio's election statutes and the Commission's authority are limited to speech that satisfies the First Amendment standard of express advocacy." (*Id.* at ¶ 12). However, "the Commission's announced understanding of that standard has become uncertain." Thus, Doe explicitly acknowledges that the Ohio election statutes are subject to an interpretation that renders them constitutional, and until recently, had been interpreted in a manner he asserts is constitutional. Indeed, in his prayer for relief, John Doe asks this Court for narrowing construction of the statute consistent with the prior interpretations given it by the Elections Commission and based on *Buckley*.

In sum, Doe's allegations help to demonstrate that the statute in question is fairly susceptible to a constitutional interpretation. There is a history of the Ohio Elections Commission interpreting the statute in a constitutional fashion, a fact that demonstrates that the statute is susceptible to such interpretations and that it is not unlikely that the state Court will again interpret the statute this way.[6] O.R.C. § 3599.03(A) may be interpreted in more than a single way, meaning that if it is of uncertain nature. John Doe alleges that the statute has been previously interpreted by the Elections Commission in a constitu-

---

6. This Court is not called upon in this case to confront an issue which has divided several U.S. Courts of Appeals. *Compare, e.g., Federal Election Commission v. Christian Action Network*, 110 F.3d 1049 (4th Cir.1997) *with Federal Election Commission v. Furgatch*, 807 F.2d 857 (9th Cir.) *cert. denied*, 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 106 (1987). The precise point at which ads become express advocacy of a candidate, as the term is used in *Buckley*, and therefore requiring disclosure of contributors and limitations on contributions, is fact based and requires review of specific ads. Regardless of which circuit cases are followed, the analysis must be based on specific ads which are not before this Court, but which are before the Ohio Elections Commission.

tional manner. Doe therefore concedes that, in his view, the statute is susceptible of such interpretation.

## 2. O.R.C. § 3517.21(B) is Fairly Susceptible to a Constitutional Interpretation.

█ John Doe also challenges O.R.C. § 3517.21(B). The language of this statute provides in pertinent part that "[n]o person, during the course of any campaign for nomination or election to public office ... by means of campaign materials, including an advertisement on radio or television ... shall knowingly and with intent to affect the outcome of such campaign ... disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election nomination or defeat of the candidate."

Initially, the Court notes that the language "statement designed to promote the election, nomination or defeat of the candidate" is fairly analogous to the "relative to" and the "advocating the election or defeat of [a candidate]" language interpreted in *Buckley.* 424 U.S. at 41–42, 96 S.Ct. 612. Consequently, the Court concludes that it could be fairly susceptible to the same interpretation of the "relative to" language rendered by the *Buckley* Court that avoided the constitutional issues raised in that case. 424 U.S. at 39, 96 S.Ct. 612.

This Court is not called upon to make a final determination as to whether O.R.C. 3517.21(B) is constitutional. Instead at this juncture, the Court must decide only whether the statute is reasonably susceptible of a constitutional interpretation. The statute is limited to a prohibition of defamatory speech, in this context meaning the utterance of speech which the declarant knows is false. The express advocacy

standard enunciated in *Buckley* plainly related to statutes regulating direct campaign activities (such as limitations on contributions and disclosure of contributors), as opposed to issue based speech which is essentially unregulated. Section 3517.21, on the other hand, can be fairly interpreted to prohibit defamatory statements.

Further, contrary to the assertions of the Chamber of Commerce, this issue of sanctioning libel or slander occurring in the context of an election, is nowhere addressed in *Buckley.* While *Buckley* prohibited limitations on advocacy groups not expressly endorsing or opposing a candidate for public office, neither *Buckley,* nor any other case cited by the Plaintiffs, affords defamatory speech made by a person or organization greater or lesser protections depending on whether the group engaged in issue-based speech or express advocacy or opposition to a candidate. Thus, the Court concludes that *Buckley* is not the proper standard to apply in the present context,

Section 3517.21 has been construed by Ohio Courts under the constitutional standards set forth in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *See Hummel v. Ohio Elections Commission,* 124 Ohio App.3d 434, 437–38, 706 N.E.2d 416 (Franklin County 1997). In *New York Times v. Sullivan,* the Supreme Court essentially held that the First Amendment protects defamatory statements about public officials relating to his or her official conduct unless the remarks are made with "actual malice." 376 U.S. at 282–83, 84 S.Ct. 710. In this case, section 3517.21(B) prohibits defamatory speech which the declarant made either "knowing the same to be false or with reckless disregard of whether it was false or not." The Court concludes, under the preliminary review required by *Pullman,* that section fairly comports with

the constitutional standard enunciated in *New York Times v. Sullivan.* Consequently, the Court concludes that *Pullman* abstention is appropriate.

### 3. Additional Considerations Favoring Abstention.

Abstention is particularly warranted given the pendency of a state proceeding that could address the very question raised by Doe. *See Tyler v. Collins,* 709 F.2d 1106, 1108 (6th Cir.1983).

The Court realizes that federal courts have "sometimes hesitated to abstain where fundamental rights" such as the right to free speech are involved because of the delay which necessarily results from abstention. In this case, no showing has been made that the challenged statutes are clearly unconstitutional. Further, any delays should be reduced by the fact that the the Elections Commission proceeding is likely to conclude in approximately four weeks. *See Tyler,* 709 F.2d at 1109 (6th Cir.1983). The Elections Commission's ruling could likely eliminate the uncertainty in question. Thus, while the Court is mindful of the potential high costs that abstention can have in First Amendment cases generally, the costs of abstention in this case do not appear potentially high.

### D. Stay Rather than Dismissal.

When abstention doctrines are at issue, the court has the power to stay or to dismiss an action where the only relief sought is equitable in nature. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716–32, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *see also Carroll,* 139 F.3d at 1079 (Moore, J., concurring). In this case, the plaintiffs are seeking declaratory relief which is equitable in nature. Consequently, the Court may either stay or dismiss this action.

The Court **STAYS** this action given at least the possibility that the Elections Commission action could be resolved without the Chamber of Commerce having the opportunity to raise its federal constitutional questions.

As for John Doe, the Supreme Court has recognized that, when *Pullman* abstention is invoked, it is preferable to stay an action as opposed to dismissing the action. *See Growe v. Emison,* 507 U.S. 25, 113 S.Ct. 1075, 1080 n. 1, 122 L.Ed.2d 388 (1993); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 10, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, the Court shall stay John Doe's claims as well.

## III. CONCLUSION.

The Court **GRANTS IN PART AND DENIES IN PART** the Defendants' Motion to Dismiss, consistent with the foregoing. (Doc. # 13). The Court shall abstain from hearing any of the claims in this case, however, the Court shall not dismiss this case. Rather, this case is hereby **STAYED** pending the ultimate resolution of the underlying Elections Commission proceedings and appeals therefrom.

The Court **DIRECTS** the Clerk to administratively close this case and to remove all outstanding motions from the Court's pending motions list. At the conclusion of the Elections Commission proceedings, the Plaintiffs shall notify the Court if they seek to reactivate this case.

**IT IS SO ORDERED.**